**Juan Jose
CARCAMO–FLORES, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

**No. 1690, Docket 86–4062.**

United States Court of Appeals,
Second Circuit.

Submitted Sept. 11, 1986.

Decided Nov. 6, 1986.

Joseph A. Azar, Atty., Central American Refugee Center, Hempstead, N.Y. (Patrick Young, of counsel), for petitioner.

Lawrence W. Chamblee, Sp. Asst. U.S. Atty., Chief, Immigration Unit, Office of the U.S. Atty. for the S.D.N.Y. (Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y., Steven E. Obus, Asst. U.S. Atty., of counsel), for respondent.

Before KAUFMAN, WINTER, and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

This appeal calls upon us to determine the proper standard to be applied in cases where an alien seeks political asylum pursuant to Immigration and Nationality Act ("INA") § 208(a), 8 U.S.C. § 1158(a) (1986), and, more specifically, the meaning of the statutory phrase "well-founded fear of persecution". 8 U.S.C. § 1101(a)(42)(A) (1986). Because we conclude that the Board of Immigration Appeals ("BIA") applied an improper standard, we reverse and remand for further proceedings in which the proper standard shall be applied.

## BACKGROUND

Petitioner Juan Carcamo-Flores ("Carcamo-Flores") is a native of El Salvador. According to his testimony before the immigration judge, he left El Salvador as a result of his fear of harm arising from three separate incidents.

The first of these occurred in March 1980 when, Carcamo-Flores testified, he was involved in a strike at the Adoc Shoe Factory which was broken up by troops and police called in by the factory owner. Seven strikers were killed in that incident. He further testified that those participants who had survived the strike were known to the factory owners and felt threatened by them.

Carcamo-Flores also feared that he was targeted by right-wing "death squads", one of which had murdered his father. According to Carcamo-Flores, his father's labor activities led to his murder.

Finally, Carcamo-Flores testified that after being fired from the Adoc factory on February 24, 1981, he went to the labor ministry to press a claim that he was owed approximately five thousand Salvadoran colones in severance pay. While there he was warned by a friend to leave or he would be killed, and, moreover, that anyone who complained to the labor ministry would be killed. He later read that other workers he had seen at the ministry pressing similar claims had been killed by "death squads".

Carcamo-Flores testified that as a result of these three incidents he came to fear for his safety and, some months later, fled El Salvador. In short, Carcamo-Flores believed that because of his own labor activities and his relationship to his assassinated father, he might be targeted for persecution, possibly murder.

Carcamo-Flores arrived in the United States on approximately September 1, 1981. On April 14, 1983, he filed an application for asylum and withholding of deportation. An order to show cause was issued on May 22, 1984, charging Carcamo-Flores with having entered the United States without inspection in violation of § 241(a)(2), 8 U.S.C. § 1251(a)(2) (1986). A hearing was then held on July 20, 1984, before an immigration judge. At that hearing, Carcamo-Flores conceded his deportability as an alien who had entered the United States without inspection under INA § 241(a)(2). His applications for political asylum pursuant to INA § 208(a) and for withholding of deportation under INA § 243(h), 8 U.S.C. § 1253(h) (1986), were denied. The immigration judge stated in his decision that to succeed "[an] alien must demonstrate a likelihood that he, individually, will be singled out and subjected to persecution."

Carcamo-Flores then appealed the immigration judge's decision to the BIA, which, affirming, specifically noted that "the eligibility standards for withholding of deportation and asylum are not meaningfully different and, in practical application, converge." Carcamo-Flores contends that this view of the applicable standards is erroneous, and we agree.

## DISCUSSION

To qualify for political asylum under the INA, an alien must demonstrate a "well-founded fear of persecution." INA § 208(a); INA § 101(a)(42)(A). At issue here is the showing necessary to establish such a well-founded fear. Carcamo-Flores argues that an alien has met his burden by

showing " 'the existence of a valid reason for fear.' " Petitioner's Brief at 29, *quoting Bolanos-Hernandez v. INS*, 749 F.2d 1316, 1322 (9th Cir.1984).

The INS contends that an alien must show that persecution is more likely than not, a standard that would make the burden for political asylum under § 208(a) identical to that for a grant of withholding of deportation, a distinct form of relief that is governed by § 243(h) of the INA. We reject the interpretation offered by the INS for two reasons. First, the law in this circuit has already been decided on this question. Second, even if the question were open to us, we would find, along with the fifth, sixth, seventh, and ninth circuits, that the standard urged by the INS is inconsistent with a proper understanding of the term "well-founded fear of persecution".

A. *The Law in this Circuit.*

A central consideration in this case is the relationship between two sections of the INA: §§ 208(a) and 243(h). Aliens in Carcamo-Flores's position, seeking affirmative relief after having conceded deportability, may apply for relief either under § 208(a), which provides for political asylum, or under § 243(h), which authorizes the withholding of deportation. In practice, applications for political asylum are automatically deemed simultaneous applications for withholding of deportation. 8 C.F.R. § 208.3(b) (1986). In *INS v. Stevic*, 467 U.S. 407, 104 S.Ct. 2489, 2501, 81 L.Ed.2d 321 (1984), the Supreme Court held that under § 243(h), relief is granted only upon a showing that persecution is more likely than not. Whether the same standard should be applied to § 208 is the critical question on this appeal.

On this question the Supreme Court in *Stevic* specifically reserved decision, 104 S.Ct. at 2501, but in our treatment of the same case at the circuit level we faced the issue, *Stevic v. Sava*, 678 F.2d 401 (2d Cir.1982), *rev'd*, *INS v. Stevic*, 467 U.S. 407, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984).

The Supreme Court recognized our conclusion that the two standards are different:

[W]e may assume, *as the Court of Appeals concluded,* that the well-founded-fear standard is more generous than the clear-probability-of-persecution standard * * *.

*Stevic*, 104 S.Ct. at 2498 (emphasis added). Our own reading of this court's opinion in *Stevic* leads us to the same conclusion: that the question of whether the "well-founded fear" standard is more generous than the "clear probability" standard was, indeed, answered there.

When *Stevic* was before this court, we determined, first, that under § 243(h) of the INA, an alien merely had to show a well-founded fear of persecution to qualify for withholding of deportation, and it was this holding that the Supreme Court reversed in deciding that § 243(h) required a showing of a clear probability of persecution. But we also concluded that a law that did employ the well-founded fear standard would differ from one using the clear probability test, and this second conclusion was never reversed by the Supreme Court.

Of course, *Stevic* dealt with § 243(h) and did not specifically address the appropriate standard under § 208(a). Nevertheless, the standard which we erroneously adopted as governing applications for withholding of deportation under § 243(h) was the same one which governs petitions for political asylum under § 208(a): a well-founded fear of persecution. Thus, since our reasoning in *Stevic* that the well-founded fear of persecution test differs from the clear probability test was not reversed by the Supreme Court, it remains for us good law.

B. *The Meaning of the Well-Founded Fear Standard.*

Even if we were to regard the relationship between the two proposed tests as an open question in this circuit, we would nevertheless conclude that our analysis of this issue in *Stevic* was correct. The conclusion that the well-founded fear and clear probability standards are different and do not converge is supported by the plain

meaning of the statutory terms themselves, by the operative effect of those terms, and by judicial decisions interpreting the two provisions.

### 1. *The Plain Meaning of "Well-Founded Fear".*

The term "well-founded fear" implies both a subjective and an objective element. The applicant must first establish the subjective element, that he does have a fear of persecution. To make that fear well-founded and thereby qualify for asylum, however, the alien must also demonstrate that there are objective facts supporting that fear. *Cardoza-Fonseca v. INS*, 767 F.2d 1448, 1452–53 (9th Cir.1985), *cert. granted*, —— U.S. ——, 106 S.Ct. 1181, 89 L.Ed.2d 298 (1986). Such a showing might be made, for example, through affidavits, journalistic accounts of other examples of persecution in the involved country, or testimony corroborating the alien's claims. This is not to say, however, that an alien must necessarily produce any particular amount or kind of evidence to demonstrate that his fear is objectively well-founded. Credible testimony by the alien might, in some cases, suffice, especially where conditions in the alien's native country make production of documentary evidence difficult or impossible. *Id.* at 1453; *Carvajal-Munoz v. INS*, 743 F.2d 562, 574 (7th Cir.1984).

In assessing how great a showing must be made to satisfy the objective element of the standard, an obvious distinction must be drawn between a well-founded fear of persecution and a greater than 50% probability of persecution. If an alien can demonstrate for example that it is 33% likely that he will be persecuted if returned to his homeland, he might reasonably possess a "well-founded" fear of such persecution. However, with only a 33% probability level, such an alien would not be able to demonstrate that it was more likely than not that persecution would occur.

Put differently, it is possible an alien could make a persuasive—even an overwhelming—showing that it was one-third likely he would be persecuted if deported. This might occur if it were the policy of the foreign government to eliminate, or otherwise persecute, one out of every three members of a group to which the alien belongs. Such a showing would suffice to demonstrate a well-founded fear of persecution but it would fail to meet the more demanding, clear probability test advanced by the INS.

This is not to say, of course, that any fear of persecution, no matter how little basis it might have in objective reality, should suffice to make the necessary showing to entitle a refugee to be considered for political asylum; some grounding in objective reality is required to make the fear well-founded. But a requirement for objective reality does not mean a greater than 50% chance.

In sum, the well-founded fear standard embodied in § 208(a) for a refugee to qualify for political asylum is a flexible one. No one type of evidence, and no one kind of persecution, will apply to all cases. While there must be both a subjective fear of persecution on the part of the alien, and a grounding in reality to make that fear objectively well-founded, we reject the contention of the government that the showing must be so persuasive as to demonstrate that persecution is more likely than not.

### 2. *The Relationship Between §§ 208(a) and 243(h).*

In addition to the verbal differences in standards between § 208(a) and § 243(h), the operative effects of those two sections also make it clear that the burden of proof on an alien seeking to qualify under each is, and should be, different.

The first major difference between political asylum under § 208(a) and withholding of deportation under § 243(h) is that a grant of political asylum is subject to the discretion of the attorney general, while withholding of deportation is mandatory.

■ Section 208(a) provides that an "alien *may* be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title." 8 U.S.C. § 1158(a) (1986) (emphasis added). Section 1101(a)(42)(A), in turn, defines as a "refugee":

[A]ny person who is outside any country of such person's nationality * * *, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion * * *.

Section 208(a) thus creates a two-step procedure. First, an alien must make a showing that he or she is a "refugee" within the meaning of INA § 101; that is, that the alien must face persecution or have a well-founded fear of persecution. Second, an alien who has made the requisite showing and established refugee status must still seek asylum, which may or may not be granted in the discretion of the attorney general. The ultimate relief—political asylum—is thus discretionary.

Section 243(h), on the other hand, provides mandatory relief. It states:

(1) The Attorney General *shall not* deport or return any alien * * * if the Attorney General determines that such alien's life or freedom would be threatened * * * on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1253(h) (emphasis added).

It is reasonable to conclude, therefore, that congress constructed a statutory framework that gives mandatory protection to an alien who, under § 243(h), can demonstrate a clear probability that he or she will be persecuted, but a lesser degree of protection, to be exercised at the discretion of the attorney general, for an alien who, under § 208(a), can show only a well-founded fear of persecution. To hold an alien seeking political asylum under § 208(a) to the clear probability standard would, in effect, read that section almost out of existence, since any alien who could meet that high burden would qualify for automatic withholding of deportation under § 243(h) and would have no need for the discretionary authority available under § 208(a).

The only reason § 208(a) would ever be used would be to enable the alien to qualify for certain benefits available to those granted political asylum but not to those whose deportation is withheld under § 243(h). *See Bolanos-Hernandez*, 749 F.2d at 1326 n. 19. We perceive these benefits to be insignificant, however, when compared to the automatic relief available under § 243(h), and they do not warrant the conclusion that § 208(a) would continue to have independent value if the clear probability test applied.

This understanding is further supported by the second crucial difference between political asylum and withholding of deportation. Section 243(h) grants withholding of deportation to a class of aliens defined by its own qualifying standard. The attorney general must withhold deportation for any alien whose "life or freedom *would* be threatened" if deported. 8 U.S.C. § 1253(h) (1986) (emphasis added). This is the language that has been interpreted by the Supreme Court, as mentioned above, to require a showing that persecution is more likely than not in order for an alien to qualify for withholding. *Stevic*, 104 S.Ct. at 2497, 2501.

■ But § 208(a) does not use this definition from § 243(h). Instead, for the definition of a "refugee" who is eligible to seek asylum under § 208(a), it refers to § 101(a)(42)(A), which speaks of those who would face "persecution *or* [have] a well-founded fear of persecution." *Id.* (emphasis added). The disjunctive "or" compels the conclusion that there are two distinct sub-groups—those who face persecution and those who have a well-founded fear of persecution—that make up the group of "refugees" under § 101(a)(42)(A).

The INS in effect urges us, however, to incorporate § 243(h)'s definition into § 101 by substituting for the "well-founded fear" language that appears in § 101(a)(42)(A), the clear probability test that governs § 243(h). But, if a "well-founded fear" of persecution is equivalent to a "clear probability" of persecution, as urged by the INS, then the language of § 101 would become nonsensical, for it would effectively define as a refugee any alien who could show either "persecution or a [clear probability] of persecution", and it would be irrelevant whether an alien feared persecution at all. We are loath to assume that congress intended the "well-founded fear" language as mere surplussage. "There is a presumption against construing a statute as containing superfluous or meaningless words or giving it a construction that would render it ineffective." *United States v. Blasius*, 397 F.2d 203, 207 n. 9 (2d Cir.1968). *See also Bird v. United States*, 187 U.S. 118, 124, 23 S.Ct. 42, 44, 47 L.Ed. 100 (1902); *Shippers National Freight Claim Council, Inc. v. ICC*, 712 F.2d 740, 754 (2d Cir.1983) (Pratt, J., dissenting).

Finally, we note that our interpretation is also supported by 8 C.F.R. § 208.3 (1986), which provides, "[A]sylum requests shall also be considered as requests for withholding * * * deportation pursuant to section 243(h) of the Act." By virtue of § 208.3, an alien who applies under INA § 208(a), but who can actually meet the higher burden of proof necessary under § 243(h), will receive the automatic relief available under the latter section, rather than be relegated to an exercise of discretion by the attorney general. If the standard of proof required under the two provisions were the same, there would seemingly be no need to deem applications under § 208(a) as simultaneous requests for § 243(h) relief—at least no need that did not render § 208(a) a nullity. On the other hand, if the showing required under § 208(a) is, as we now hold, less than that under § 243(h), then deeming requests under the former as also seeking relief based on the latter serves the obvious purpose of providing an alien the level of relief consistent with his or her showing, and avoids the unnecessary burden of two separate applications by the same alien. *INS v. Stevic*, 104 S.Ct. at 2497 n. 18; *Yousif v. INS*, 794 F.2d 236, 241–42 (6th Cir.1986).

Because the term "well-founded fear of persecution" is readily susceptible of a definition that both distinguishes it from the clear probability standard under § 243(h) and gives separate meaning and significance to § 208(a), we conclude that our interpretation is supported by the terms of the relevant sections and regulations.

### 3. *Judicial Interpretations of Section 208(a).*

In *INS v. Stevic, supra,* the Supreme Court specifically reserved the question of whether the well-founded fear test differs from the clear probability test. The Court stated, "We do not decide the meaning of the phrase 'well-founded fear of persecution' which is applicable by the terms of the Act and regulations to requests for discretionary asylum. That issue is not presented by this case." *Stevic*, 104 S.Ct. at 2501.

Since that time, however, the issue has been addressed by five of our sister circuit courts of appeals. Of these, four have determined that the well-founded fear test differs in practice from the clear probability test. Only the third circuit has held to the contrary, and we find its holding unpersuasive. Thus, even were we not convinced that the question has been decided in this circuit as well, we would nevertheless concur with the fifth, sixth, seventh, and ninth circuits in their conclusions. *See Guevara Flores v. INS*, 786 F.2d 1242 (5th Cir.1986); *Yousif v. INS, supra,* (6th Cir.); *Youkhanna v. INS*, 749 F.2d 360 (6th Cir. 1984); *Carvajal-Munoz v. INS*, 743 F.2d 562 (7th Cir.1984); *Cardoza-Fonseca, supra* and *Bolanos-Hernandez, supra* (9th Cir.).

In *Sotto v. INS*, 748 F.2d 832 (3d Cir. 1984), a panel of the third circuit held that the well-founded fear standard did not differ significantly from the clear probability standard. It based this holding on its con-

clusion that the question had already been settled in that circuit in *Rejaie v. INS*, 691 F.2d 139, 146 (3d Cir.1982), wherein the court had said, "[T]here is no difference in the * * * burden of proof formulation whether labeled 'clear probability' or 'well-founded fear' of persecution * * *." *See Sotto*, 748 F.2d at 836. While we, of course, accept the conclusion of the third circuit in *Sotto* that *Rejaie* had decided the question there, we do not believe, for the reasons stated below, that the precedent is persuasive.

First, the court in *Rejaie* did not discuss the distinction created by the mandatory nature of § 243(h). In discussing the 1980 recodification that made withholding of deportation mandatory, the court said that "the modification of § 243(h) was effected solely for the sake of clarity * * *." 691 F.2d at 144. To the contrary, however, the changes made by congress in fact had substantive impact, *see Bolanos-Hernandez*, 749 F.2d at 1320, and the now-mandatory relief afforded by § 243(h) distinguishes it from § 208(a).

Moreover, *Rejaie* interpreted the proper standard to be applied under § 243(h) itself, and § 208(a) was not even at issue in that case. In previous cases various formulations had been articulated under § 243(h), with some courts referring to a well-founded fear of persecution and others to a clear probability of persecution. The contention was made in *Rejaie* that these formulations meant something different, even though they were interpreting the same statute. Understandably, the court in *Rejaie* sought to reach a common sense conclusion by holding that the differing semantics had made no real difference under a single statute. However, where two different sections have two different verbal formulations and offer fundamentally different relief, as here, more than mere semantics is at issue; a different standard reasonably governs the burden of proof under each.

We further note that *Rejaie* was decided before the Supreme Court's decision in *Stevic*, where, as noted by the ninth circuit, the Court alerted the circuits to the possi-bility that the well-founded fear of persecution standard might well differ in practice from the clear probability standard. *See Cardoza-Fonseca*, 767 F.2d at 1451. Based on each of these factors, as well as on what we perceive to be the more persuasive reasoning of the other courts that have addressed this question, we reject the analysis of the third circuit.

C. *Application of the Appropriate Standard to This Appeal.*

■ On the record before us there is some question whether the BIA actually applied the correct "well-founded fear" formulation. The language of its decision is ambiguous. It said, "We have held that the well-founded-fear standard for asylum requires an alien's fear of persecution to have a sound basis in external, objective facts that show it is *likely* the alien will become the victim of persecution." *In re Juan Jose Carcamo-Flores*, Order of the Board of Immigration Appeals, April 16, 1986 at 3 (emphasis added). The BIA went on to note that in its view "the eligibility standards for withholding of deportation and asylum are not meaningfully different and, in practical application, converge." *Id.* Each of these statements would seem to indicate that the board applied, incorrectly, the clear probability test.

However, the board also said,

In the case before us, the respondent has not met the statutory standard of eligibility for asylum, regardless of whether his claim is assessed in terms of demonstrating a "clear probability," a "realistic likelihood," a "reasonable possibility," or a "good" or "valid reason to fear" persecution.

*Id.* This language might indicate that the board assessed Carcamo-Flores's claim not only under the incorrect clear probability standard, but also under the standard that we have indicated is appropriate. However, we are unconvinced that this recitation of the various formulations that have been suggested as governing claims under § 208(a) actually indicates that the board seriously entertained Carcamo-Flores's

claims under the correct well-founded fear test, especially since the board has consistently and persistently ruled, despite contrary rulings by the courts of appeals, that there is no substantive difference between the standards it purported to apply. The ninth circuit in *Martinez-Sanchez v. INS*, 794 F.2d 1396, 1398–99 (9th Cir.1986), rejected the invocation of similar boiler-plate language as inadequate to overcome the inference that the board had applied an incorrect standard.

A reading of the board's opinion in this case leaves at least room for significant doubt as to whether the appropriate standard was applied, and we find it impossible to conclude, as some courts have done, that Carcamo-Flores could not have met the correct well-founded fear standard. *Cf. Yousif v. INS*, 794 F.2d at 244; *Lopez v. INS*, 775 F.2d 1015, 1016–17 (9th Cir.1985). It is the responsibility of the immigration judge and the BIA to assess proof in light of the correct test. We decline to do so in the first instance on this appeal. We therefore remand the case for further proceedings in which the board is directed to apply explicitly and clearly the well-founded fear test to Carcamo-Flores's claim.

For purposes of remand and for future purposes, we adopt the standard as recently articulated by the fifth circuit in *Guevara Flores v. INS*, 786 F.2d at 1249. There, the court said, "An alien possesses a well-founded fear of persecution if a reasonable person in her circumstances would fear persecution if she were to be returned to her native country." This reasonable person standard appropriately captures the various formulations that have been advanced to explain the well-founded fear test. We emphasize, however, that in evaluating a claim based on the fear that would strike a "reasonable person", the board should be sensitive to the position into which the person is, hypothetically, being placed. What is relevant is the fear a reasonable person would have, keeping in mind the context of a reasonable person who is facing the possibility of persecution, perhaps including a loss of freedom or even, in some cases, the loss of life. In a nutshell, our result reflects the common sense proposition that a reasonable person could have a well-founded fear of persecution even where the objective reality is that the likelihood of persecution is under 50%.

Reversed and remanded.