**Sayeed RASOOL, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

**No. 89 Civ. 6251 (RJW).**

United States District Court, S.D. New York.

Feb. 15, 1991.

## MEMORANDUM DECISION

ROBERT J. WARD, District Judge.

Sayeed Rasool ("Rasool") petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241 and 8 U.S.C. 1105a(a)(9), seeking review of an order of exclusion and deportation issued by the Board of Immigration Appeals (the "BIA"). For the reasons that follow, the order of the BIA is reversed, and the matter is remanded to the BIA to permit it to exercise its discretion regarding Rasool's application for asylum.

## BACKGROUND

Rasool is a native and citizen of Afghanistan, who arrived at JFK International Airport in New York on December 24, 1988. He did not possess any documents authorizing his admission into the United States, and was therefore detained by respondent Immigration and Naturalization Service (the "INS") pursuant to section 235(b) of the Immigration and Nationality Act of 1952, as amended, 8 U.S.C. § 1225(b) (the "Act").

Rasool thereafter filed an application for political asylum, which was forwarded to the State Department for an advisory opinion pursuant to 8 C.F.R. § 208.10. At his exclusion hearing, held before an Immigration Judge on March 3, 1989, Rasool conceded excludability under § 212(a)(20) of the Act, 8 U.S.C. § 1182(a)(20). The hearing then proceeded on Rasool's application for asylum under § 208(a) of the Act or, in the alternative, for withholding of deportation pursuant to § 243(h) of the Act.

At the hearing, Rasool was represented by his present attorney. He testified that, while in Afghanistan, he had aided the Mujahedin [1] by providing them with food and

---

1. The Mujahedin are the anti-communist rebels engaged in a struggle against the Communist government of Afghanistan.

money, and by distributing leaflets and giving them reports. His father and brother were also actively engaged in aiding the Mujahedin. Rasool's father made anti-government speeches and wrote leaflets in addition to contributing money to the rebel cause, and his brother was killed in 1984 during a fight with government forces. Further, a cousin of Rasool was imprisoned for nine years after the government searched his store and found "night letters"[2] which had been hidden there by the cousin's brother. In 1984, Rasool's father had twice been detained and questioned by the authorities and then released. Rasool stated that the government had detained his father based upon the suspicion that he was aiding the Mujahedin, and then had released him because it failed to find any proof to support these suspicions.

On August 10, 1988, Rasool and his father were at his father's store in Kandahar City with two other Mujahedin who had brought a report to Rasool's father. Rasool was given the report containing information for the Mujahedin and instructed to bring it to a battlefield called "Islamic Party" in Demassuse, approximately one hour's walking distance from the store. Rasool left on foot with the report at approximately 9:00 a.m. While he was gone, his father and the two other Mujahedin were shot and killed in the store. On his way home, Rasool learned of the murders from a neighbor, Pazella Martin, who had been sent to notify him. Rasool was warned by neighbors not to return to his home or he would be killed. He immediately fled to his uncle's house in a neighboring suburb, where he remained in hiding for four months prior to coming to the United States.

Rasool stated his belief that his father and the two other Mujahedin were killed by government agents. Although the gunmen wore civilian clothing, Rasool had been told by a shopkeeper that they were communists. This shopkeeper told him that two

people had walked into the store and shot the three men, and then later a jeep arrived containing uniformed government people who searched the store and locked it up. Rasool testified that he fled to his uncle's home "[b]ecause they searched our home. In the home they found night letters that my father had and then they asked about me and they told them that I was not here so that is why I disappeared." Transcript of Proceedings, Exhibit A to Declaration of Timothy Macfall ("Tr."), at 65. While he was at his uncle's house, shopkeepers "told [Rasool's] uncle to tell [Rasool] not to come there because [his] life would be in danger."

At the close of the hearing, the Immigration Judge rendered an oral decision denying petitioner's requests for relief, and ordered that he be excluded and deported to Afghanistan. On March 13, 1989, petitioner filed a timely appeal with the BIA. He was paroled from INS custody pending the determination of his appeal by the BIA. On July 24, 1989, the BIA dismissed petitioner's appeal, finding that he had failed to meet his burden of proof on both his applications for asylum and for withholding of deportation. Petitioner now challenges those findings of the BIA.

## DISCUSSION

During his exclusion proceeding, petitioner sought asylum or, in the alternative, withholding of deportation.[3] These are the two principal statutory remedies available to an alien seeking to avoid deportation from the United States. *E.g., Brice v. U.S. Dep't of Justice,* 806 F.2d 415, 417 (2d Cir.1986).

### I. *The Alien's Burden of Proof.*

#### A. Asylum under § 208—

Under § 208(a) of the Act, an alien "may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refu-

---

**2.** The term "night letters" refers to anti-government literature.

**3.** "In practice, applications for political asylum are automatically deemed simultaneous applica-

tions for withholding of deportation. 8 C.F.R. § 208.3(b) (1986)." *Carcamo–Flores v. I.N.S.,* 805 F.2d 60, 63 (2d Cir.1986).

gee...." 8 U.S.C. § 1158(a). Section 101(a)(42)(A) of the Act defines the term "refugee" as:

> any person who is outside any country of such person's nationality ... and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion....

8 U.S.C. § 1101(a)(42)(A) (1970 & Supp. 1990); *INS v. Cardoza–Fonseca*, 480 U.S. 421, 428, 107 S.Ct. 1207, 1211, 94 L.Ed.2d 434 (1987); *Doherty v. U.S. Dep't of Justice, INS*, 908 F.2d 1108, 1114 (2d Cir.1990). "Thus, the 'persecution or well-founded fear of persecution' standard governs the Attorney General's determination whether an alien is eligible for asylum." *INS v. Cardoza–Fonseca, supra*, 480 U.S. at 428, 107 S.Ct. at 1211. The burden is on the alien to demonstrate a well-founded fear of persecution. *See, e.g., Doherty v. U.S. Dep't of Justice, INS, supra*, 908 F.2d at 1114.

■ To demonstrate a well-founded fear of persecution, "an alien must demonstrate a subjective fear of persecution and some objective facts supporting that fear." *Brice v. U.S. Dep't of Justice*, 806 F.2d 415, 418 (2d Cir.1986); *Carcamo–Flores v. INS*, 805 F.2d 60, 64 (2d Cir.1986). *See also INS v. Cardoza–Fonseca, supra*, 480 U.S. at 430–31, 438–40, 107 S.Ct. at 1212–13, 1216–18. Ideally, the requirement of "some objective facts supporting that fear" should be satisfied through such corroborative evidence as "affidavits, journalistic accounts or other examples of persecution in the involved country, or testimony corroborating the alien's claims." *See Carcamo–Flores v. INS, supra*, 805 F.2d at 64. However, it is possible that "[c]redible testimony by the alien might, in some cases,

suffice, especially where conditions in the alien's native country make production of documentary evidence difficult or impossible." *Id.* In any event, it is now settled law that an alien need not demonstrate that it is more likely than not that he will be subject to persecution in order to satisfy the "well-founded fear" standard. *INS v. Cardoza–Fonseca, supra*, 480 U.S. 421, 107 S.Ct. 1207. *See Carcamo–Flores v. INS, supra*, 805 F.2d at 64.[4]

As noted above, once an alien has demonstrated that he qualifies as a refugee, he may be granted political asylum in the discretion of the Attorney General.

**B. Withholding of Deportation under § 243(h)—**

Section 243(h) provides that:

The Attorney General shall not deport or return any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1253(h) (1970 & Supp.1990). In order to avoid deportation under this section, "an alien must establish a clear probability of persecution...." *INS v. Stevic*, 467 U.S. 407, 413, 104 S.Ct. 2489, 2492, 81 L.Ed.2d 321 (1984). Under this standard, the question is "whether it is more likely than not that the alien would be subject to persecution." *Id.* at 424, 104 S.Ct. at 2498.

"Unlike asylum, which is discretionary, withholding of deportation is a mandatory remedy that prohibits the attorney general from deporting an alien to a country where there is a clear probability that his 'life or freedom would be threatened'" because of one of the five enumerated factors. *Doherty v. U.S. Dep't of Justice, INS, supra*, 908 F.2d at 1114. The remedy is, however, narrower than that of asylum. Under a

---

**4.** The Second Circuit in *Carcamo–Flores* suggested that a 33% showing would suffice. *Id.* In *Cardoza–Fonseca*, the Supreme Court, while declining to "set forth a detailed description of how the 'well-founded fear' test should be applied, *INS v. Cardoza–Fonseca, supra*, 480 U.S. at 448, 107 S.Ct. at 1221, quoted various formulations of the standard, some of which suggested that a 10% probability of persecution would be sufficient to make an alien's fear well-founded. *Id.* at 431, 440, 107 S.Ct. at 1213, 1217.

grant of asylum, the alien is permitted "to remain in the United States where he can eventually apply for lawful permanent residence." *Id.* Withholding of deportation "bar[s] deportation only to the nation where the alien faces persecution, but not to nonthreatening third countries." *Id.*

## II. *The Standard of Review.*

### A. Denial of Asylum—

■ As Respondent notes, both the Supreme Court and the Second Circuit have yet to rule directly on the standard of judicial review applicable to a denial of political asylum under § 208. However, the Second Circuit in dicta has suggested that the correct standard is whether the decision of the BIA is supported by substantial evidence. In *Chun v. Sava*, 708 F.2d 869, 876 (2d Cir.1983), the Court stated:

> Nothing that we have said, of course, goes to the substantive question whether petitioners are in fact entitled to be treated as asylees. Resolution of this question requires the development of a factual record, for Congress, in accordance with treaty law, has instructed the INS to deny asylum in certain circumstances, including a determination that an alien applicant is not a refugee within the meaning of the Act (footnote omitted). And of course the Attorney General *shall not* deport or return alien refugees, as a matter of statutory law, 8 U.S.C. § 1253(h)(1), as well as of treaty law, .... Congress's limitation on the Attorney General's discretion requires careful fact-finding. *Were the substantive question before us, the issue on appeal would be whether there was substantial evidence on the record as a whole to support the INS decision....*

*Chun v. Sava, supra,* 708 F.2d at 876 (emphasis supplied) (citing *McMullen v. INS,* 658 F.2d 1312, 1316 (9th Cir.1981)).

*McMullen,* cited favorably by the Second Circuit in this regard, dealt with the standard of review to be applied to withholding of deportation decisions under § 243(h). However, the above-quoted language in *Chun* appears also to find that the decision whether an alien is a refugee is to be reviewed under the substantial evidence standard. *See Sarkis v. Nelson,* 585 F.Supp. 235, 237–38 (E.D.N.Y.1984).

In *Sarkis,* Judge McLaughlin held that: where the [BIA] denies political asylum not as a matter of discretion, but as a result of its factual determination that petitioner[ ] [has] not demonstrated a well-founded fear of persecution, its determination must be supported by substantial evidence.

*Sarkis v. Nelson, supra,* 585 F.Supp. at 238. *See also Carvajal–Munoz v. I.N.S.,* 743 F.2d 562, 567 (7th Cir.1984) (applying substantial evidence test to finding regarding refugee status) (citing *Sarkis v. Nelson, supra,* 585 F.Supp. at 237–38). *Cf. McMullen v. INS, supra,* 658 F.2d at 1316 (standard for evaluating factual determination of BIA is substantial evidence). In the instant case the denial of asylum was likewise a result of the BIA's factual determination that Rasool failed to demonstrate a well-founded fear of persecution. Accordingly, the Court determines that the rationale enunciated in *Sarkis* is persuasive, and that the substantial evidence standard is appropriate for review of the BIA's determination whether an alien has demonstrated that he is a refugee under the Act.[5]

Insofar as courts in other jurisdictions have applied a more deferential standard of review, the Court declines to follow them. *See Young v. U.S. Dep't of Justice, INS,* 759 F.2d 450, 455 n. 6 (5th Cir.), *cert. denied,* 474 U.S. 996, 106 S.Ct. 412, 88 L.Ed.2d 362 (1985) (denial of discretionary relief, such as asylum, may not be disturbed absent abuse of discretion);[6] *San-*

---

5. However, the discretionary determination whether a refugee alien is entitled to a grant of asylum would properly be reviewed under an abuse of discretion standard.

6. Respondent cites another case, *Espinoza–Martinez v. INS,* 754 F.2d 1536 (9th Cir.1985), in

support of its argument that "the Circuits that have addressed the issue are unanimous ... in holding that the BIA's denial of asylum must be upheld unless the court determines that the BIA abused its discretion." Memorandum of Law in

*kar v. I.N.S.*, 757 F.2d 532 (3d Cir.1985) (court will overturn decision of the BIA only if it abused its discretion).[7]

### B. Withholding of Deportation—

■ Respondent argues that the decision of the BIA with respect to withholding of deportation under § 243(h) should be subject to an abuse of discretion standard of review. Respondent asserts that the circuits are split on this issue, with the Third, Sixth and Eighth Circuits applying an abuse of discretion standard, and the Fifth, Seventh, Ninth and Eleventh Circuits applying a substantial evidence test. *See* Memorandum in Opposition at 17.

A review of the cases cited by Respondent, as well as other cases not cited, reveals that in fact the Third Circuit is the only court directly to have held that an abuse of discretion standard applies to § 243(h) determinations. *See Marroquin–Manriquez v. I.N.S.*, 699 F.2d 129, 133 n. 5 (3d Cir.1983), *cert. denied*, 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984). The other courts which have addressed the issue have held overwhelmingly that, under the language of the 1980 Act which made decisions regarding withholding of deportation mandatory upon a finding of a clear probability of persecution, the substantial evidence standard must be applied. *See Espinoza–Martinez v. I.N.S.*, 754 F.2d 1536, 1539 (9th Cir.1985); *Young v. U.S. Dep't of Justice, INS*, 759 F.2d 450, 455–56 n. 6 (5th Cir.), *cert. denied*, 474 U.S. 996, 106 S.Ct. 412, 88 L.Ed.2d 362 (1985); *Carvajal–Munoz v. I.N.S.*, 743 F.2d 562, 569 (7th Cir.1984); *Chavarria v. U.S. Dep't of Justice*, 722 F.2d 666, 670 (11th Cir.1984); *Reyes v. I.N.S.*, 693 F.2d 597, 599 (6th Cir.1982) (per curiam); *McMullen v. INS*, 658 F.2d 1312, 1316 (9th Cir.1981). *See also Sarkis v. Nelson, supra*, 585 F.Supp. at 237 & n. 4; 8 U.S.C. § 1105a(a)(4).

Because the Court agrees with the reasoning of those courts which have determined that the substantial evidence test is the correct standard of review to be applied to the BIA's decision to deny relief under § 243(h); and because the dicta in *Chun*, quoted above, suggests that the Second Circuit would apply this standard, the Court finds that the BIA's decision, to be upheld, must be supported by substantial evidence.

### III. *The Merits.*

■ The BIA, following a *de novo* review of the entire record, dismissed Rasool's appeal based upon a finding that he had failed to provide an objective basis for his belief that it was the government which killed his father and the other two Mujahedin, and that he had likewise failed to pro-

---

Opposition to Petition for Writ of Habeas Corpus at 14. In *Espinoza–Martinez* the court held:

> Even when an alien meets this burden [of demonstrating a well-founded fear of persecution], and is thus a refugee, the alien is not automatically entitled to asylum. The decision whether or not to grant an application, once the alien has met the refugee definition, rests in the discretion of the Attorney General under § 208(a). [citation omitted]. *Logically, then, our review of an asylum decision takes place on two levels. The initial decision of whether the alien has met the refugee definition can be reviewed under the substantial evidence test.* The ultimate grant or denial of asylum, however, must be reviewed under the abuse of discretion standard.

*Id.* at 1539. Thus, it is clear that the Ninth Circuit applies the substantial evidence test to the first "prong" of the asylum determination, which contains the non-discretionary element of the test. Respondent's argument on this point is therefore simply wrong. Further, Respondent's insistence that every Circuit to decide the issue

has held that the abuse of discretion standard applies is also contradicted by the decision of the Seventh Circuit in *Carvajal–Munoz v. I.N.S., supra*, 743 F.2d at 567, which applied a substantial evidence standard of review.

7. *Respondent's other citations are not on point. Minwalla v. INS,* 706 F.2d 831, 834 (8th Cir. 1983), concerned a motion to reopen proceedings to allow an alien to apply for asylum. The denial of such a motion is discretionary, and thus properly subject to review under an abuse of discretion standard. In *Youkhanna v. INS,* 749 F.2d 360, 362 n. 2 (6th Cir.1984), the court stated in a footnote that, even if the court were to find that petitioners did have a well-founded fear of persecution, they would not prevail on their petition since they had failed to demonstrate that the discretionary decision whether to grant them asylum constituted an abuse of discretion. This statement merely sets out the settled proposition that the discretionary portion of the asylum determination is reviewed under an abuse of discretion standard.

vide an objective basis for his belief that the government subsequently sought him out because he was missed when the murders occurred. The BIA determined that "the behavior of the government officers is consistent with the kind of investigation that one would expect" following a crime such as that committed against Rasool's father and the other two men.

The Court first notes that petitioner's credibility was not questioned by either the Immigration Judge or the BIA. Rather, both appear to have credited his testimony, yet disagreed with the inferences drawn by petitioner from the facts presented. *See Sarkis v. Nelson, supra,* 585 F.Supp. at 240 (fair reading of BIA's opinion shows that applications were not denied on general credibility grounds, but on specific grounds discussed by court). Accordingly, the Court will "accept petitioner's statements where they establish factual circumstances with specificity, are not speculative, and do not conflict with petitioner's other evidence." *Carvajal–Munoz v. I.N.S.,* 743 F.2d 562, 577 (7th Cir.1984). ▮▮▮ Petitioner's testimony was quite specific and factually grounded. A review of the record leaves this Court not with an image of a vague and generalized fear based upon the unrest and disregard for civil rights in petitioner's country, or based simply upon Afghanistan's record of persecution of rebel sympathizers. Rather, Rasool at his exclusion hearing presented concrete and specific facts implying that the government was looking for him in particular, that it had singled him out for adverse treatment, and that his life would be in danger were he to return to that country. The facts recited by Rasool suggest rather unmistakably that the government was responsible for the deaths of his father and the two other Mujahedin at his father's store. Although there may be some reasonable doubt as to the identity of the killers, an alien is not required to prove that he will be persecuted beyond a reasonable doubt. Instead, his burden is to demonstrate that it is more likely than not that he will be subject to persecution in order to satisfy § 243(h), or that he has a reasonable fear of persecution to satisfy § 208. This Rasool has done.

The BIA's suggestion that Rasool's father and the two other men might have been killed by non-government forces is unsupported by anything in the record, let alone by substantial evidence. Indeed, all of the evidence presented at the hearing suggests quite strongly that it was the government which was responsible for the killings. Even if that were not the case, in searching Rasool's home following the murders government agents found rebel literature and asked neighbors about Rasool's whereabouts. In light of his testimony that his cousin was imprisoned for nine years following a similar incident, Rasool's evidence of likely persecution grew even stronger after this occurrence.

The Court is unable to conceive of precisely what further evidence petitioner could possibly have offered to support his contention that it was the government which was responsible for his father's death, or that he was being sought by the government not in connection with a "criminal investigation," but because he had fortuitously been absent during the killings. The shopkeepers and neighbors who witnessed the shootings and the subsequent "investigation" believed that Rasool's life was in danger. They presumably would be in a position to know the difference between a routine criminal investigation and a manhunt for a suspected rebel sympathizer. In addition, the State Department's Country Report on Human Rights, incorporated as an exhibit at the hearing, fully supports Rasool's testimony and the inferences he drew therefrom.

## CONCLUSION

In sum, after a review of the entire record, the Court finds that the decision of the BIA is not supported by substantial evidence. Rasool's testimony, accepted as credible, demonstrated a clear probability of persecution in the event of his deportation to Afghanistan. For the same reason, he met the lesser burden of demonstrating a reasonable fear of persecution. Accordingly, the matter is remanded to the BIA

for an exercise of discretion regarding whether Rasool is entitled to political asylum. Further, the Court directs that petitioner's application for withholding of deportation be granted, and that he not be deported to Afghanistan in any event.

It is so ordered.