**The H. W. WILSON COMPANY, Plaintiff-Appellee,**

v.

**UNITED STATES POSTAL SERVICE, Defendant-Appellant.**

**No. 934, Docket 78–6013.**

United States Court of Appeals, Second Circuit.

Argued May 10, 1978.

Decided July 7, 1978.

---

**34**

Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, New York City, Mary C. Daly, Asst. U. S. Atty. for the Southern District of New York, New York City, for defendant-appellant.

John L. Warden, Sullivan & Cromwell, New York City, for plaintiff-appellee.

Before HAYS, INGRAHAM * and MANSFIELD, Circuit Judges.

INGRAHAM, Circuit Judge:

This case presents us with an important issue of first impression in this circuit—whether several publications, including the *Readers' Guide to Periodical Literature* and *Index of Legal Periodicals*, are periodicals as that term is used in 39 U.S.C. §§ 4351 and 4354 (1962), and are therefore entitled to second class mailing privileges. These publications are published by plaintiff-appellee, The H. W. Wilson Company (Wilson), and up until the initiation of these proceedings some had been accorded second class mailing privileges for almost eighty years.

By letters dated February 12, 1973, and April 4, 1973, the Postal Service notified Wilson of its intention to revoke the second class mailing status of these publications. A hearing was held before an administrative law judge who upheld the revocations on the ground that the publications were not periodicals under the test employed by the Postal Service. On June 28, 1976, his decision was affirmed by a Judicial Officer of the United States Postal Service.

The case below was submitted on cross-motions for summary judgment. The district court reversed the Postal Service on summary judgment, holding that the publications were periodicals and that therefore revocation of second class mailing status was unlawful. The district court permanently enjoined the Postal Service from refusing second class mailing privileges to any of these publications until the governing statute is changed. We affirm the district court insofar as it held the revocation of second class status was unlawful, but reverse the enjoining of the future revocation of second class mailing privileges. We remand the case for further proceedings.

The Wilson publications for which second class mailing status was revoked are the following: *Cumulative Book Index, Readers' Guide to Periodical Literature, Education Index, Abridged Readers' Guide to Periodical Literature, Biological & Agricultural Index, Social Sciences & Humanities In-*

* Of the United States Court of Appeals for the Fifth Circuit, sitting by designation.

dex, *Applied Science & Technology Index* and *Index to Legal Periodicals.* Each is composed of alphabetical listings of citations to other written material, primarily articles in periodicals. The listings in each issue are arranged for easy reference, usually being grouped by subject and author. Except for *Social Sciences & Humanities Index*, the Wilson publications are cumulative in character. Every third issue contains all references published in the preceding issues, plus such new matter as was indexed in the interval between the publication of the second and third issues. Annually and triennially, the issues are further cumulated. Therefore, a continuity exists between issues for it is necessary that the same general format and specific subject headings be retained from issue to issue.

According to the controlling statutes, "[s]econd class mail embraces newspapers and other periodical publications when entered and mailed in accordance with sections 4352–4357 of this title." 39 U.S.C. § 4351 (1962). The purpose of this statutory scheme establishing second class mailing rates is to "[encourage] by low postal rates the dissemination of current intelligence." *Lewis Publishing Co. v. Morgan,* 229 U.S. 288, 303–304, 33 S.Ct. 867, 871, 57 L.Ed. 1190 (1913). Both parties agree that each of the Wilson publications satisfies §§ 4352–4357, thus meeting the technical requirements for second class mailing privileges.[1] The only question then is whether each publication is a periodical.

The controlling statutes do not define "periodical." Nor has the Postal Service ever felt a need to promulgate regulations which would aid in this determination. The Postal Service claims instead that it has defined and continues to define the term by reference to the standard formulated by the Supreme Court in *Houghton v. Payne,* 194 U.S. 88, 24 S.Ct. 590, 48 L.Ed. 888 (1904). As applied by the Postal Service, that standard requires that a periodical contain "a variety of original articles by different authors." *Id.* at 97, 24 S.Ct. at 592. It was because the Wilson publications do not contain "original articles" that the Postal Service chose to revoke this second class status.

We agree with the district court that the Postal Service erred in concluding that *Houghton* mandates that a publication satisfy the "original articles" test in order to be classified as a periodical. The fallacy of the Postal Service's reasoning is illuminated by a closer examination of both the textual and factual context within which the phrase was utilized.

To put the phrase in its textual context, we quote from the paragraph within which it appears:

A periodical, *as ordinarily understood,* is a publication appearing at stated intervals, each number of which contains *a variety of original articles by different authors,* devoted either to general literature of some special branch of learning or to a special class of subjects. Ordinarily each number is incomplete in itself, and indicates a relation with prior or subsequent numbers of the same series. It implies a continuity of literary character, a connection between the different numbers of the series in the nature of the articles appearing in them, whether they be successive chapters of the same story or novel or essays upon subjects pertaining to general literature. *Id.* (Emphasis added).

It can readily be seen that by using the qualifying phrase, "as ordinarily understood," the Court was not pronouncing an

---

1. Of particular relevance is § 4354 which provides:

(a) Generally a mailable periodical publication is entitled to be entered and mailed as second class mail if it—
(1) is regularly issued at stated intervals as frequently as four times a year and bears a date of issue and is numbered consecutively;
(2) is issued from a known office of publication;
(3) is formed of printed sheets;
(4) is originated and published for the dissemination of information of a public character, or devoted to literature, the sciences, arts, or a special industry; and
(5) has a legitimate list of subscribers. 39 U.S.C. § 4354 (1962)

iron-clad rule of law. This conclusion accords with a statement made by the Court earlier in its opinion to the effect that a periodical "shall not only have the feature of periodicity, but that it shall be a periodical in the ordinary meaning of the term." *Id.* at 96, 24 S.Ct. at 592. If the Court did articulate a definitive standard for a "periodical" in *Houghton,* we believe this "ordinary meaning" test is closer to that standard. When the Court spoke of "variety of original articles," therefore, it was merely searching for that "ordinary meaning" by delineating some of the characteristics which one normally associates with periodicals.

An examination of the factual context within which the case was decided buttresses our conclusion that the "variety of original articles test" was not intended as an immutable rule of law. *Houghton* began with a proceeding much like the one in the present case to revoke a permit allowing second class mailing status. The publications at issue were soft cover reprints of standard works by such authors as Thackeray, Whittier, Lowell, Emerson and Irving, reissued under the title, *Riverside Literature Series.* The volumes were issued monthly or quarterly and numbered consecutively. Each number contained a single novel or story, or a single collection of short stories or poems by the same author. As such, each was "complete in itself and entirely disconnected with every other number." *Id.* at 95, 24 S.Ct. at 591.

In contrast to the present case, the *Houghton* Court was called upon to draw the line of demarcation between a periodical and a *book.* As the court below noted,

the "variety of original articles" test was a standard too broad to be suited to this task since both books and periodicals could satisfy the requirement.[2] Because this characteristic does not necessarily distinguish a book from a periodical, it was not essential to the Court's holding in the case. The limited nature of the actual holding in *Houghton* is reflected in the Court's restatement of the holding in a related case decided the same day. In *Bates & Guild Co. v. Payne,* 194 U.S. 106, 107, 24 S.Ct. 595, 596, 48 L.Ed. 894 (1904), the Court said, "[T]he principle established in the two cases just decided [is] . . . that books published at stated intervals and in consecutive numbers do not thereby become periodicals . . . ." We refuse to read into *Houghton* a broader rule of decision than was needed to decide the case.

We also reject the contention of the Postal Service that the so-called "*Houghton* test" has been consistently followed by the postal authorities and courts through the years. There is no better evidence of the fact that the Postal Service has not followed the *Houghton* test than that several of the Wilson publications have enjoyed second class mailing status for almost a century.[3] The district court was correct in its observation that the only consistency present in the Postal Service's action over the years has been the granting of original entries as second class mail to six of the eight Wilson publications involved, and the granting of reentry as second class mail to the publications on numerous occasions.[4]

Nor can we agree that recent court decisions have uniformly paid homage to the *Houghton* standard. In fact, one of the

2. We take judicial notice of the fact that the standard is also too narrow, insofar as it requires the articles be *original.* Many publications which are considered in every day parlance to be periodicals, such as the Readers' Digest, are comprised almost wholly of reprints of articles that appeared earlier in other publications.

3. Original second class mail privileges were entered for Cumulative Book Index in 1898, Readers' Guide in 1900, Social Sciences & Humanities Index in 1904, Index to Legal Periodicals in 1914, Biological and Agricultural Index

in 1924, Applied Science & Technology Index in 1925, Education Index in 1929, an Abridged Readers' Guide in 1935.

4. The Postal Service argues that administrative consistency and stability authorize inquiry into the correctness of the original administrative rulings, and that it is the duty of the Postal Department to correct past mistakes. We have no argument with this principle of administrative practice. We believe, however, that the present case reflects a significant change in Postal Service policy, not an effort to modify prior incorrect determinations.

cases cited by the Postal Service, *Standard Rate & Data Service, Inc. v. United States Postal Service*, No. 77–0299 (D.D.C. July 20, 1977), appeal docketed, No. 77–1848 (D.C. Cir.), held that the administrative law judge had erred as a matter of law in treating *Houghton* as an immutable legal definition. We find none of the other cases cited by the Postal Service to be authority for its position. The publications involved in those cases were not denied second class mailing status for failure to satisfy the *Houghton* test; many did not even meet the threshold standard required by the statute—dissemination of current intelligence.[5]

Our conclusion that the *Houghton* standard does not control the definition of "periodical" accords with the only other recent case at the court of appeals level to consider the question. In *Institute for Scientific Information v. United States Postal Service*, 555 F.2d 128 (3d Cir. 1977), the court struck down a Postal Service revocation of second class mailing status for *Current Contents*, a weekly paperbound publication which reproduces the table of contents of scientific and technical journals within each publication's specific field. The court rejected the supposition that a publication is required to include a variety of original articles by different authors in order to qualify under the statutory definition of a periodical. The court held that this was but one factor to be considered in the calculus.

■ Ordinarily, we give much deference to the decision of an administrative agency, whether it be a regulatory agency or an independent public service agency as the Postal Service now is, *see* 39 U.S.C. § 201 (Supp.1978). Nevertheless, when the question is one of law and does not implicate the expertise of the agency, we must provide a

stricter standard of review. *Institute for Scientific Information v. United States Postal Service*, 555 F.2d at 132. This is particularly true when, as in the present case, "the administrator's legal decision is based on his interpretation of a judicial opinion that in turn construes a statute." *Id.*

With this role in mind, and after carefully reviewing the arguments presented by each side, we conclude that the Postal Service applied an incorrect legal standard in its determination that the Wilson publications were not periodicals. The district court was therefore correct in finding that the revocation of second class mailing status for these publications was unlawful.

■ We believe, however, that the lower court was incorrect in enjoining the Postal Service from refusing second class mailing privileges to these periodicals in the future. We therefore confine our holding to the conclusion that the "variety of original articles" standard is erroneous and unworkable, is not mandated by *Houghton*, and has not been consistently applied by the Postal Service. *Houghton* requires only that a publication have the feature of periodicity and that it be a periodical in the ordinary meaning of the term. We add to *Houghton* the requirement that the second class mailing privilege be utilized in such a way as to further the wide dissemination of intelligence as to current events. We believe that our role ends with this description of the limits which *Houghton* places upon the definition of a periodical.[6] We defer to the expertise of the Postal Service for a more complete definition of "periodical." *See Ferraro v. Immigration and Naturalization Service*, 535 F.2d 208, 210 (2d Cir. 1976),

---

5. *See, e. g., National Auto Research, Inc. v. United States Postal Service*, No. 76–766 (D.D.C. Dec. 20, 1976), appeal docketed, No. 77–1174 (D.C.Cir.) ("Black Book" listing wholesale motor vehicle prices); *Reuben H. Donnelly Corp. v. United States Postal Service*, No. 76–1336 (D.D.C. May 20, 1977) (Travel planner and hotel guide which did not qualify as a transportation guide); *Teleflora, Inc. v. United States Postal Service*, No. 75–228 (D.D.C. June 25, 1975).

6. We therefore part from the Third Circuit, which held in *Institute for Scientific Information, Inc. v. United States Postal Service*, 555 F.2d at 132, that the publication under consideration did qualify as a periodical, and therefore could not be denied second class mailing status.

citing *Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Texas Gas Transmission Corp. v. Shell Oil Co.*, 363 U.S. 263, 80 S.Ct. 1122, 4 L.Ed.2d 1208 (1960); *NLRB v. Hearst Publications, Inc.*, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944).

We affirm that part of the judgment of the court below that holds unlawful the revocation of second class mailing privileges of the named periodicals published by Wilson, and that part which sets aside the decisions of the Administrative Law Judge and the Judicial Officer. We remand to the district court for further proceedings not inconsistent with the foregoing.[7]

Affirmed in part; reversed and remanded in part.

**7.** Our remand, of course, does not preclude the Postal Service from conducting regulatory proceedings for the purpose of developing an exact, clear and lucid definition of a periodical for future application, provided any new standard emerging from such proceedings is promulgated in compliance with requisite administrative procedures and satisfies the mandate of 39 U.S.C. § 4351 (1962).