Nur **MOHAMMAD** a/k/a Noor Ahmad, Petitioner,

v.

William **SLATTERY**, Director of the New York District of the Immigration and Naturalization Service, Respondent.

No. 93 Civ. 0497 (CHT).

United States District Court, S.D. New York.

Feb. 2, 1994.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Andrew Herwitz, of counsel), for petitioner.

Mary Jo White, U.S. Atty., S.D.N.Y., New York City (James A. O'Brien, Sp. Asst. U.S. Atty., of counsel), for respondent.

## ORDER AND OPINION

TENNEY, District Judge.

On May 23, 1990, the Immigration Judge ("IJ") for the New York District denied Nur

Mohammad a/k/a Noor Ahmad's application for asylum under 8 U.S.C. § 1158(a) after an *in absentia* hearing. Petitioner ("Ahmad") brought three subsequent motions to reopen the hearing, one before the IJ and two before the Board of Immigration Appeals ("BIA" or "Board"). All were denied. He now seeks an order reversing those decisions and remanding his asylum application for a determination on the merits. Jurisdiction is proper with this court pursuant to 8 U.S.C. § 1105a(10)(b). For the reasons set out below, the petition is granted.

## BACKGROUND

Petitioner Ahmad arrived in the United States on March 3, 1990 after fleeing his native Afghanistan. Before fleeing, he was imprisoned and tortured for nine months by the government.[1] Also, petitioner presented evidence that his father, three cousins and uncle were murdered, and his brother injured, by government forces. See Affidavit of Mary E. Davis, attorney for petitioner, sworn to on June 30, 1992. Petitioner claims that the formerly Soviet-backed Afghanistan government is hostile towards his family for aiding the Mujahedin, and that government forces would have tortured or killed him had he remained in Afghanistan. The persecution of the fundamentalist Islamic Mujahedin sect and its supporters by the former Afghanistan government is well documented. See Exhibits Attached to Petition for a Writ of Habeus Corpus ("Pet. Exh.") at Exhibits F, G, H, I and J.

Doubting that the Afghanistan government would authorize his departure from the country, petitioner arrived at JFK International Airport on a flight from Pakistan without travel documents and was excludable pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I).[2] Petitioner declared his intent to seek asylum and was informed that a hearing would be held to determine whether he should be excluded and deported. Pet. Exh. C. On May 10, 1990, the office of the Immigration Judge sent petitioner a notice that his case was scheduled for a hearing on May 23, 1990. R. at 51.[3] The notice contained a warning that failure to appear for the hearing could result in an *in absentia* determination by the IJ. However, petitioner, having recently changed residences, failed to receive this notice. R. at 53. At the hearing held in his absence, the IJ found that Ahmad had failed to appear "without reasonable cause," denied his application for lack of prosecution, and ordered that he be excluded from the United States pursuant to § 212(a)(20) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1182(a)(7)(A)(i)(I). R. at 45. On May 29, 1990, the INS informed petitioner by mail that he had until June 11, 1990 to appeal the decision to the BIA. R. at 56.

Sometime after this, petitioner received the notice of hearing from a friend with whom he lived before the change of address. He then retained counsel and on July 13, 1990, filed an application to reopen the hearing. The IJ noted that petitioner had still not explained his failure to file a change of address notice until after the *in absentia* hearing and denied his request on August 21, 1990. R. at 42.

Petitioner appealed the denial of his application to reopen to the BIA, asserting that Ahmad had reasonable cause for his absence, and that the IJ's refusal to reopen the exclusion proceeding was unreasonable, arbitrary, and an abuse of discretion. On December 3,

---

1. Respondent has not specifically challenged any of the facts of petitioner's asylum claim, arguing instead that the asylum claim is not properly before this court.

2. 8 U.S.C. § 1182(a)(7)(A)(i)(I), formerly 8 U.S.C. § 1182(a)(20), authorizes exclusion for any immigrant:

 who is not in possession of a valid unexpired immigrant visa, reentry permit, border cross-ing identification card, or other valid entry document as required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations. . . .

3. Citations to "R." are to the certified administrative record of proceedings.

1990, the BIA, citing 8 C.F.R. § 265.1,[4] dismissed the appeal on the grounds that petitioner had failed to provide notice of his address change within ten days after his move, and that this precluded any showing of reasonable cause for his absence from the hearing. R. at 33.

Petitioner then sought to reopen the BIA's December 3 decision. Petitioner explained that his failure to notify the Immigration Office of his change of address stemmed from his ignorance of English and his lack of counsel or advice on Immigration and Naturalization Service (INS) procedures, and he described the merits of his asylum petition. Once again the BIA held that petitioner's failure to notify the INS of his change of address precluded any showing of reasonable cause for his absence. R. at 3. Petitioner filed a petition for a writ of habeas corpus in this court, seeking to reverse the order of exclusion and deportation.

The petition was originally before Judge Peter K. Leisure, who referred it to Magistrate Judge Naomi Reice Buchwald ("MJ") pursuant to 28 U.S.C. § 636(b)(1)(B). On April 30, 1993, the MJ issued a Report and Recommendation (the "Report"), advising that the order denying petitioner's motion for a rehearing be reversed and that petitioner be granted a new exclusion hearing before the IJ. After the parties filed their responses to the Report, Judge Leisure transferred the petition to me.

## DISCUSSION

### I. Magistrate Judge's Report.

In submissions before the MJ, the government argued that the BIA's order should be upheld both because the petitioner had failed to exhaust his administrative remedies and because the BIA decision was sound on the merits. However, the MJ limited her discussion to the latter point, since at oral argument the government's position had been that, even if petitioner had made all of his arguments before the IJ on his initial motion to reopen, that motion was correctly denied. Report at 6, n. 8.

Petitioner argued that he had been denied a full and fair hearing on the merits of his asylum claim. He stated that because he moved from his original residence at approximately the same time that the INS sent notice of his hearing, and because he did not receive notice of the hearing from his former roommate, with whom he had arranged to forward his mail, until after the hearing date, he had "reasonable cause" for his failure to attend the hearing. He further argued that the BIA abused its discretion by refusing to consider relevant factors when denying him a new hearing on the merits of his asylum claim.

The government's position was that violation of 8 C.F.R. § 265.1 prevented any showing of reasonable cause for petitioner's failure to attend the deportation hearing. According to the regulation, an alien under threat of exclusion must notify the INS of any address change within ten days of the change. The regulation itself does not discuss the consequences of failing to notify the INS of an address change. However, the government argued that the IJ has discretion to consider the failure to notify when reviewing an application to reopen an exclusion proceeding. In the present case, the IJ relied upon petitioner's violation of the ten day notice provision to support his finding that no reasonable cause existed upon which to reopen the exclusion proceeding. The BIA affirmed the IJ's decision on the same grounds.

The MJ recommended granting the habeus petition. She found that the use of *in absentia* proceedings is improper without "obstructionist tactics" on the alien's part. The MJ also noted that petitioner was never apprised

---

4. 8 C.F.R. § 265.1 is entitled "Forms" and states in part:

except for those exempted by section 263(b) of the Act, all aliens in the United States required to register under section 262 of the Act shall report each change of address and new address within 10 days on Form AR–11.

of section 265.1 or of the fact that noncompliance would prevent him from establishing "reasonable cause" for his failure to appear at the hearing. She found that failure to consider his lack of actual notice of the hearing in light of these factors was a serious flaw in the IJ's initial refusal to grant petitioner a rehearing. Report at 8. Lastly, the MJ found that the BIA had compounded the error by failing to balance the equities of petitioner's case, including his lack of notice and his meritorious asylum claim, against his failure to comply with section 265.1. *Id.* at 13.

## II. Respondent's Objections to the Magistrate Judge's Report.

The standard of review for a Magistrate Judge's Report with objections is *de novo.* 28 U.S.C. § 636(b)(1).

### a. Exhaustion Requirements.

Respondent argues that this court cannot consider the grounds upon which the Report rests because many of them were never raised before the BIA, and therefore petitioner failed to exhaust his administrative remedies. The remedy sought here, the reopening of petitioner's exclusion hearing, was presented before the BIA on two separate occasions.

■ Generally, the petitioner's appeal of first resort to the BIA with respect to the remedy sought on review satisfies the administrative exhaustion requirement. *Athehortua–Vanegas v. I.N.S.,* 876 F.2d 238, 240 (1st Cir.1989); see also *Gurbisz v. United States Immigration and Naturalization Service,* 675 F.Supp. 436, 442 (N.D.Ill.1987). However, respondent points to Second Circuit precedent in which parties on appeal from an administrative hearing were denied relief even though they proceeded through the proper administrative channels, on grounds that they had failed to exhaust administrative remedies with respect to the particular claim presented. While petitioner, at different stages of review, presented more elaborate and refined versions of his initial arguments before the BIA, these elaborations did not rise to the level of new claims for relief, never presented before the administrative tribunal. Therefore, the Second Circuit cases cited by respondent are inapposite. See, e.g., *Correa v. Thornburgh,* 901 F.2d 1166, 1171 (2d Cir.1990) (claim not raised before the BIA was that alien had actually effected entry into U.S., which would trigger a different section of the immigration statute); *Augustin v. Sava,* 735 F.2d 32, 36 (2d Cir.1984) (same).

■ Moreover, the exhaustion requirement may be waived by the reviewing court as a matter of discretion when its imposition fails to serve underlying policy considerations. *Diapulse Corporation of America v. F.D.A.,* 500 F.2d 75, 78 (2d Cir.1974); see also *Jean v. Nelson,* 711 F.2d 1455, 1506 (11th Cir.1983); *Sagermark v. I.N.S.,* 767 F.2d 645, 648 (9th Cir.1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). The policy concerns behind the exhaustion requirement—"that an administrative agency should have a full opportunity to resolve a controversy or correct its own errors before judicial intervention" *Sagermark,* 767 F.2d at 648—have been amply met in this case by petitioner's three prior appearances before the INS in search of the remedy for which he now petitions this court.

■ In addition, the administrative exhaustion requirement may be waived by the reviewing court when failure to consider alternative theories may lead to an unjust result. See *Tenneco Oil Co. v. Dept. of Energy,* 475 F.Supp. 299, 309 (D.Del.1979): "[t]here may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below" (quoting *Hormel v. Helvering,* 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941)). In the present case, petitioner has presented a colorable claim for asylum and has brought forward persuasive evidence

that he may be imprisoned or killed were he to return to Afghanistan. Therefore, the BIA's refusal to allow petitioner to present the merits of his claim before the INS on the basis of a largely ministerial regulation creates the possibility of an unjust result.

### b. Standard of Review.

 Respondent also objects to what it terms the MJ's *"de novo* assessment of whether petitioner merits reopening of his proceedings." Generally, judicial review of BIA decisions must proceed under an abuse of discretion standard. *Thomas v. I.N.S.,* 976 F.2d 786, 789 (1st Cir.1992); *Wijeratne v. I.N.S.,* 961 F.2d 1344, 1348 (7th Cir.1992). While formulation of the abuse of discretion standard is by no means invariable, the Second Circuit has interpreted it to require that the BIA's decision "[was] made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group or ... on other considerations that Congress could not have intended to make relevant." *Wong Wing Hang v. I.N.S.,* 360 F.2d 715, 719 (2d Cir.1966).

 As respondent argues, it is "well settled that a reviewing court may not reweigh the factors relevant to a discretionary determination by the BIA." Respondent's Objections at 8 (citing *I.N.S. v. Rios–Pineda,* 471 U.S. 444, 452, 105 S.Ct. 2098, 2103, 85 L.Ed.2d 452 (1985); *I.N.S. v. Jong Ha Wang,* 450 U.S. 139, 144, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981)). However, when the BIA's decision is fact-sensitive and failure to address relevant factors is of sufficient magnitude, the court may reconsider the merits of the decision. See *Mejia–Carrillo v. United States Immigration and Naturalization Service,* 656 F.2d 520, 522 (9th Cir.1981) (BIA's decision may be reversed only for an abuse of discretion, such as failure to consider all relevant facts). See also *Seatrain International, S.A. v. Federal Maritime Com.,* 598 F.2d 289, 292 (D.C.Cir.1979) (interpreting 5 U.S.C. § 706(2)(A)). In addition, an agency's conclusions of law are reviewable under a higher standard than that of "abuse of discretion." *H.W. Wilson Co. v. United States Postal Service,* 580 F.2d 33, 37 (2d Cir.1978) ("when the question is one of law and does not implicate the expertise of the agency, we must provide a stricter standard of review").

In the present case, the MJ recognized that she was limited to determining only "whether the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Report at 12 (quoting 5 U.S.C. § 706(2); *I.N.S. v. Abudu,* 485 U.S. 94, 100, 106, 108 S.Ct. 904, 909, 912, 99 L.Ed.2d 90 (1988); *Vargas v. I.N.S.,* 938 F.2d 358, 360 (2d Cir.1991)). Respondent argues that the MJ erred by not applying the standard of review suggested by *I.N.S. v. Doherty,* —— U.S. ——, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992). In that case, the Supreme Court applied solely the "abuse of discretion" standard in reviewing a BIA order denying reopening of an asylum claim. *Id.* at ——, 112 S.Ct. at 724.

However, even accepting that "abuse of discretion" alone is the appropriate standard in this case, the court believes that the scope of the MJ's review was proper. The MJ partially addressed her inquiry to the fairness of the procedures governing the BIA's discretion in this case, rather than to the authorized use of discretion itself. This line of inquiry is permissible. Charles Gordon & Stanley Mailman, *Immigration Law and Procedure,* § 81.09[1] at 81–141 (Rev.Ed. 1993); see also *In re Cartellone,* 148 F.Supp. 676, 679 (D.C.Ohio 1957) ("Administrative Procedure Act authorizes a review by the court and inquiry as to fairness of hearing"), *aff'd,* 255 F.2d 101 (6th Cir.1958), *cert. denied,* 358 U.S. 867, 79 S.Ct. 99, 3 L.Ed.2d 99 (1958).

 Moreover, the examining court may engage in a searching review of the rationale for an administrative agency's decision to determine whether the agency's action was based on a consideration of relevant factors. See *Mejia–Carrillo,* 656 F.2d at 522; cf.

*Sanchez v. I.N.S.*, 755 F.2d 1158, 1161 (5th Cir.1985) (applying the abuse of discretion standard to alien's attempt to avoid deportation via claim of extreme hardship). Finally, the MJ characterized the BIA's central finding, that petitioner's noncompliance with section 265.1 precluded reasonable cause for his failure to appear at the hearing, as a legal conclusion, for which a higher standard of review is appropriate. *H.W. Wilson*, 580 F.2d at 37. An examination of the MJ's Report reveals that the scope of her review is consistent with these guidelines.

#### c. The Merits.

According to 8 C.F.R. § 3.2, "[m]otions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." In addition, the United States Supreme Court has held that motions to reopen may be denied for petitioner's lack of a reasonable explanation for failure to present an asylum claim at the initial hearing or for failure to establish a *prima facie* case for asylum. *I.N.S. v. Abudu*, 485 U.S. 94, 104–105, 108 S.Ct. 904, 911–12, 99 L.Ed.2d 90 (1987).

On all three of his motions petitioner offered material evidence not previously available or presented to the BIA. This evidence consisted of the merits of his asylum claim and affidavits concerning the circumstances of his failure to receive actual notice of his exclusion hearing. However, the Board refused to reopen exclusion proceedings. In both of its decisions on this matter, the Board relied exclusively upon petitioner's failure to comply with 8 C.F.R. § 265.1, requiring aliens to file a change of address notice within ten days. The MJ concluded that the BIA had abused its discretion by inexplicably departing from established INS policies in denying petitioner's motion to reopen his hearing, Report at 14, and recommended that the INS reopen his hearing.

The court concurs with the MJ's result, but not her analysis. There was no evidence in the record of established INS policies with respect to granting motions to reopen exclusion hearings or to holding such hearings *in absentia.* It may be, as the MJ states in her Report at 14, that in no case has a motion to reopen an *in absentia* hearing been denied on such blameless conduct as was relied upon by the BIA in this case. However, this lack of cases does not imply a consistent administrative policy on the part of the INS.

Likewise, the MJ's finding that the use of *in absentia* proceedings is improper without "obstructionist tactics" on the alien's part is not supported by INS precedent or other judicial interpretations of the immigration laws, and does not seem necessary to reach her result in this case. In any event, whether the BIA inexplicably departed from established policies cannot be satisfactorily determined from the record.

■ However, while the court is unable to conclude that the BIA violated established policies, it is equally unable to absolve the BIA of error in this case. Examination of an agency decision under the abuse of discretion standard includes a determination of whether agency action was based upon a consideration of relevant factors. *Mejia–Carrillo*, 656 F.2d at 522; see also *Howard v. I.N.S.*, 930 F.2d 432, 434 (5th Cir.1991) (reviewing BIA's final order of deportation for "error in law and [whether] reasonable, substantial and probative evidence on the record considered as a whole supports its factual findings"). Moreover, in reviewing BIA decisions "an evaluation of the agency's treatment of the evidence [before it] is part of review of discretionary agency action." *Coriolan v. I.N.S.*, 559 F.2d 993, 998 (5th Cir. 1977). In the present case, the BIA's treatment of the evidence before it was so cursory as to amount to no review at all.

At the time the BIA issued its decision, petitioner's motion to reopen proceedings on his asylum claim had already been through three stages of review. At each level, the petitioner supplemented previous filings with additional testimonial evidence going to his lack of fault in failing to notify the INS of his

change of address and to the merit of his asylum claim, which remained unheard. The petitioner's evidence demonstrated that he had made good faith efforts to comply with INS procedures throughout the exclusion proceedings and that his failure to comply with section 265.1 was prompted mainly by his lack of English language ability and by his ignorance of the provision and its requirements. Evidence was also presented supporting the merits of petitioner's asylum claim.

 Petitioner also argued that by failing to receive actual notice of his exclusion hearing, he had been deprived of his right to a full and fair hearing on the merits of his asylum claim. This claim has merit. See *Sewak v. I.N.S.*, 900 F.2d 667, 672 (3rd Cir. 1990) (claim that deportation order issued *in absentia* is improper when alien lacked actual notice of the hearing had merit); see also 8 U.S.C. § 1226(a) (alien subject to exclusion has statutory right to hearing on the merits of his application). However, while the BIA's decision mentioned the lack of actual notice, it was given no weight because the petitioner violated § 265.1 by failing to provide a change of address notice within ten days of moving from his last known address.

The decision to discount petitioner's lack of actual notice was error on the part of the BIA. In this case, the INS mailed a notice of hearing form to petitioner's last known address on May 10, 1990. The mailing was intended to notify petitioner that a hearing on his asylum claim was scheduled for May 23, 1990. This provided Ahmad with a window of less than two weeks between the time notice was sent and the scheduled hearing.

According to uncontested evidence submitted by petitioner Ahmad, at approximately the time notice of his exclusion hearing was sent Ahmad moved from the apartment of the friend with whom he had been staying in Woodside, New York to another friend's apartment in Brooklyn.

Except for his failure to appear on May 23, 1990, Ahmad has complied with all INS procedures. It is uncontested that petitioner failed to receive actual notice of his May 23 exclusion hearing. However, while the BIA suggests that petitioner is at fault for this, he is not wholly blameworthy: Ahmad made arrangements with his former roommate to forward his mail, and according to an uncontested affidavit submitted by this roommate, the mail was forwarded several weeks after petitioner moved. R. at 30. By then Ahmad's hearing had already been held, and he had been excluded *in absentia.* The INS itself contributed to his failure to appear by allowing less then two weeks between the notice of hearing and the hearing date.

 This court cannot conclude that petitioner, who has what appears to be a meritorious *prima facie* case for asylum [5] supported by medical evidence of his torture and abuse at the hands of the Afghanistan government, should be entirely prevented from presenting any of this evidence to the INS because of failure to appear at an exclusion hearing for which he lacked actual notice. This is so even though Ahmad's lack of notice was partially his fault; his failure to comply with the technical provisions of 8 C.F.R. 265.1 does not justify the harsh penalty here proposed. See *Sakhavat v. I.N.S.*, 796 F.2d 1201, 1204 (9th Cir.1986) (BIA's denial of motion to

---

5. An applicant for asylum may establish his or her eligibility if he or she can prove either past persecution by objective documentation or a well-founded fear of persecution. *Carcamo–Flores v. I.N.S.*, 805 F.2d 60, 65 (2nd Cir.1986) (citing 8 U.S.C. §§ 1158(a), 1101(a)(42)(A)). Petitioner has presented a variety of evidence tending to establish his persecution, imprisonment and torture by the Afghanistan government. His own testimony concerning the nature and extent of his injuries are supported by the affidavit of an examining physician, who stated that petitioner's current health problems and the scars on his body are all consistent with petitioner's description of his treatment at the hands of government forces. See, Affidavit of Ariel Dan Teitel, M.D., sworn to on May 18, 1992.

Moreover, the BIA itself has admitted that the fundamentalist Islamic Mujahedin sect, whom petitioner and his family aided with food and supplies, have been targeted for political and religious persecution by the repressive Afghanistan government. See *Matter of Izatula*, Interim Decision 3127, 1990 WL 385750 [on FIM–BIA specialized database], 1990 BIA LEXIS, 6 (Feb. 6, 1990). While circumstances have changed somewhat since petitioner fled the country, the consequence of the fall of the Soviet Union for Afghanistan is unclear. At present, the country is embroiled in a civil war. *Diplomats Escape Afghanistan as Brief Truce Stills the Guns*, New York Times, A4 (Jan. 9, 1994). In any event, petitioner's fear of persecution in Afghanistan seems no less justified now than it was in 1990.

reopen was an abuse of discretion where agency failed to adequately consider petitioner's meritorious *prima facie* case for asylum, even though petitioner had failed to request asylum at his initial hearing, where petitioner had reasonable cause).

According to 8 U.S.C. § 1253(h)(1), "[t]he Attorney General shall not deport or return any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." The BIA, as the judicial arm of an executive agency, has a regulatory mandate to conduct a discretionary balancing of the facts in its decisions. See 8 C.F.R. § 208.10 ("failure to appear may be excused for other serious reasons in the discretion of the Asylum Officer"). However, its broad discretion should not extend to the scrupulous enforcement of a ministerial regulation at the cost of petitioner's statutory right to a hearing on his facially valid claim, especially where he has complied with all INS procedures of which he was aware. See *Doherty v. United States Dept. of Justice, Immigration and Naturalization Service*, 908 F.2d 1108, 1114 (2d Cir.1990) ("right to apply for asylum or withholding of deportation carries with it right to a hearing 'where the likelihood of persecution can be fairly evaluated' "), *rev'd on other grounds*, —— U.S. ——, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992).

Therefore, to the extent that the BIA's decision implies that failure to comply with section 265.1 precludes a showing of reasonable cause without regard to the circumstances leading to the failure to comply, it is an abuse of discretion. See Report at 13–14 (analyzing legal authority on exclusion proceedings and concluding that a *per se* rule concerning violations of section 265.1 is unwarranted); cf. *Augustin v. Sava*, 735 F.2d at 37 ("the protected right to avoid deportation or return to a country where the alien will be persecuted warrants a hearing where the likelihood of persecution can be fairly evaluated"); *Sewak*, 900 F.2d at 672.

This court is wary of usurping agency discretion, and is aware of the impropriety of substituting its judgment for that of the BIA within matters under the agency's jurisdiction. However, what is uncontested is that courts may not *reweigh* factors already considered by the administrative tribunal. This implies that some weighing was done by the tribunal in the first instance. Reviewing courts would be abdicating their own responsibility if they failed to correct agency decisions which denied *any* weight to relevant factors in the record before them.

## CONCLUSION

For the reasons stated above, petitioner's habeas corpus motion is granted. The court orders the exclusion proceedings reopened for consideration on the merits of petitioner's asylum application and his claim for withholding deportation. The hearing is to be held within 60 days of the filing of this order unless an extension is sought for good cause shown.

So ordered.