**In the Matter of Adeboye, Olugbenga MICHAEL, Petitioner,**

v.

**William SLATTERY, as District Director of the New York District of the Immigration and Naturalization Service, and Roseanne Sonchik, as Acting Assistant District Director for the Detention and Deportation of the New York District of the Immigration and Naturalization Service, Respondents.**

No. 94 Civ. 1306 (JFK).

United States District Court, S.D. New York.

May 5, 1994.

Delphine Winthrop Knight, New York City, for petitioner (Elizabeth A. Hone, of counsel).

Mary Jo White, U.S. Atty., S.D.N.Y., New York City, for petitioners (F. James Loprest, Jr., Sp. Asst. U.S. Atty., of counsel).

### *OPINION AND ORDER*

KEENAN, District Judge:

Before this Court is a petition for a writ of habeas corpus on behalf of petitioner, a Nigerian native, for a review of the decision of the Board of Immigration Appeals in petitioner's case. The respondents, William Slattery, as District Director of the New York District of the Immigration and Naturalization Service, and Roseanne Sonchik, as Acting Assistant District Director for the Detention and Deportation of the New York District of the Immigration and Naturalization Service, oppose this petition. For the reasons that follow, that petition is granted.

### *BACKGROUND*

Petitioner is a twenty-three year old Nigerian citizen who arrived in the United States without valid travel documents permitting entry. He was detained at JFK airport by the Immigration and Naturalization Service ("INS"). Exclusion proceedings were initiated pursuant to 8 U.S.C. section 1251(a)(1) of the Immigration and Nationality Act (the "Act"). Petitioner applied for political asylum and withholding of exclusion pursuant to sections 208 and 243(h) of the Act. *See* 8 U.S.C. §§ 1158 and 1253(h). The Immigration Judge denied petitioner's application on October 14, 1993. *See In re Adeboye* (unpublished decision of the Immigration Judge, No. A72 481 114, New York, October 14, 1993) [hereinafter "Hearing Decision"]. The Board of Immigration Appeals (the "Board") dismissed petitioner's appeal of that denial on February 25, 1994. *See In re Adeboye* (unpublished decision of the Board of Immigration Appeals, No. A72 481 114, New York, February 25, 1994) [hereinafter "Board Decision"]. That dismissal subjected petitioner to immediate deportation to Nigeria, pursuant to section 237 of the Act. *See* 8 U.S.C. § 1227. Petitioner now seeks review by this Court pursuant to 8 U.S.C. section 1105a(b) of the Act. Petitioner has requested and received a stay of deportation pending this Court's review.

### A. *Conditions in Nigeria*

As a student at Ibadan Polytechnic University, petitioner became involved in student government and pro-democracy groups. In May of 1993, petitioner joined Nigerians for Democratic Rule ("NDR"), a political group dedicated to fostering the change in Nigeria from military rule to democratic rule. As a member of that group, petitioner posted flyers, educated people about the election process, and encouraged people to participate in the upcoming elections scheduled for June 12, 1993.

On June 9, 1993, the leader of NDR was murdered. On June 10, 1993, twelve NDR members were arrested while campaigning. Petitioner contends that he and other NDR members continued to encourage voter turnout while dodging arrest themselves. On June 12, 1993, petitioner worked at various polling places around the city of Ibadan. On his return home, petitioner was informed by

a neighbor that the military-based State Security Service ("SSS") had come by earlier in the day looking for him. Fearing arrest, petitioner fled to a friend's home and agreed with fellow NDR members that he would not return home.

NDR members arranged for petitioner to leave Nigeria. Petitioner decided to visit his cousin in the United States until the situation in Nigeria cooled down. NDR members gave petitioner an airline ticket to the United States, a passport and a Resident Alien card. These travel documents, in the name of Gabriel Morphy Aderomilehin, were doctored to include a photo of petitioner. On June 14, 1993, without returning home and without informing anyone outside of NDR of his plans, petitioner left Nigeria for the United States. Petitioner states that he had never before been outside of Nigeria and hoped a democratically elected government would take office soon so that he could return home.

### B. *Arrival in the United States*

Petitioner arrived in the United States on June 15, 1993. He presented his invalid travel documents to the INS officials. INS officials, suspicious of the doctored documents, detained petitioner for questioning. Petitioner admitted that the documents were not his.

Petitioner signed an affidavit after being interviewed by INS officials. Petitioner is not completely fluent in English and states that he did not read his affidavit prior to signing it. He agrees that the affidavit is basically correct, although not complete. In the affidavit, petitioner gave his real name and nationality. He stated that he had come to the United States to visit his brother and wished to remain for three weeks. He stated that he had never been arrested, but that if he had to return home, the government would kill him. He further stated that he wanted a new Nigerian President to be announced so he could return to Nigeria.

The INS officials informed petitioner that he would not be admitted to the United States and that he was entitled to a hearing, unless he wanted to return to Nigeria voluntarily. Petitioner requested his hearing.

Petitioner was then served with a notice charging that he was subject to exclusion on four grounds: 1) attempting to enter the country by fraud, pursuant to section 212(a)(6)(C)(i) of the Act; 2) attempting to enter the country without a valid immigration visa, pursuant to section 212(a)(7)(A)(i)(I) of the Act; 3) attempting to enter the country without a valid travel document, pursuant to section 212(a)(7)(B)(i)(I) of the Act; and 4) attempting to enter the country without a valid nonimmigrant visa, pursuant to section 212(a)(7)(B)(i)(II) of the Act. Petitioner was then placed in an INS detention center and a hearing on his potential exclusion was scheduled. Petitioner filed his application for asylum and withholding of deportation on August 26, 1993.

### C. *Current Conditions in Nigeria*

Petitioner states that the situation in Nigeria has not improved while he has been in detention. He submitted evidence about the current conditions in Nigeria at his exclusion hearing. The democratically elected government, chosen during the June 12, 1993 elections, has not been permitted to take office. Petitioner believes that the SSS is still after him and he alleges that he is afraid to return home.

On November 18, 1993, a successful military coup was staged in Nigeria. There has been a renewed crackdown against pro-democracy activities. All democratic institutions have been dissolved. Political parties, political gatherings, and the Nigerian Election Commission have been banned. Civilian officials in local, state and federal government have been replaced with members of the military.

Petitioner's family and friends have related that the military regularly harasses them in hopes of discovering petitioner's whereabouts. They further state that the military continues to search for petitioner. Petitioner's mother and girlfriend were briefly detained by the military. Three of petitioner's friends in the NDR have been killed since the petitioner left Nigeria. Petitioner's mother apparently has gone into hiding.

Petitioner asserts that he remains committed to the goal of assisting Nigeria's transition to democracy. He is eager to return home when it is safe to do so.

### D. *Advisory Report*

On September 1, 1993, the Bureau of Human Rights and Humanitarian Affairs of the United States Department of State (the "State Department") sent the Immigration Judge an advisory report entitled *Country Conditions and Asylum Claims from Nigeria*. This report did not concern petitioner specifically. Rather, it considered the political climate in Nigeria generally. It noted that Nigerian asylum applicants frequently stress "fears for their personal safety based on their generalized opposition" to the military regime. The report went on to note that the military dictator had departed from government and that millions of Nigerians had opposed him. The report concluded that "mere opposition . . . short of unlawful criminal actions against the government would not now appear [to be] cause for concern." It must be noted that this report pre-dated the military coup that ousted the democratically elected government and re-imposed military rule.

### E. *The Proceedings Below*

#### 1. The Immigration Hearing

A hearing was held on petitioner's application for political asylum and withholding of deportation on October 14, 1993. Petitioner testified at that hearing as to the facts that form the basis of his fear of persecution, which forms the basis of his asylum application. Petitioner submitted corroborating materials. The INS did not present any contrary evidence or testimony.

The Immigration Judge denied petitioner's application, although he found petitioner to be credible and ruled that petitioner had not perpetrated any fraud on the United States. The Judge ruled that petitioner had failed to establish that he had a well-founded fear of persecution. In his decision, the Judge stated that the applicant has the burden of establishing his right to political asylum. *See* Hearing Decision, *supra*, at 7. While the

Judge noted that the evidence raised issues as to whether the applicant had a well-founded fear of persecution, the Judge ultimately concluded that no real proof "had been furnished that the security apparatus of the government of Nigeria is interested in the applicant." *See id.* The Judge concluded that the applicant had the burden of establishing that the Government was still interested in him and has the means to persecute him. *See id.* at 9.

Petitioner urges that this ruling was based on the Judge's impermissible application of the incorrect standard of proof for determination of a well-founded fear of persecution—the clear probability standard.

In addition, the Immigration Judge noted his opinion as to the current conditions in Nigeria—"I believe that things have cooled down in Nigeria. I believe this interim government is not a puppet government under [the military's] rule." *Id.* Petitioner contends that this was an impermissible substitution of the Judge's own opinion for the substantial evidence in the record. Moreover, petitioner points out that the successful coup staged one month later proves the Judge's opinion to be incorrect.

#### 2. Decision of the Board of Immigration Appeals

Petitioner appealed the ruling of the Immigration Judge to the Board on December 6, 1993. The INS did not submit any papers opposing this appeal. Petitioner had two bases for his appeal—the Judge's impermissible substitution of his own opinion for the evidence in the record, and the Judge's application of the improper standard of proof to evaluate petitioner's well-founded fear of persecution.

On February 25, 1994, the Board dismissed petitioner's appeal on the grounds that petitioner failed to present the requisite evidence that he would be persecuted in Nigeria. Specifically, the Board held that petitioner failed to establish that "it is more likely than not that he would be subject to persecution on account of" his political activities in Nigeria. *See* Board Decision, *supra*, at 4. The petitioner urges that in so ruling, the Board incorrectly applied a clear proba-

bility standard ("more likely than not"), rather than the correct "reasonable possibility" standard, to petitioner's well-founded fear of persecution.

### DISCUSSION

Petitioner now seeks review by this Court on the grounds that the Board applied the incorrect standard of proof, the clear probability standard, when it required petitioner to prove that he would "more likely than not" be subject to persecution. Rather, petitioner urges that he need only prove that he has a well-founded fear of persecution that is a "reasonable possibility" if he is forced to return to Nigeria. In addition, the petitioner urges that the Board ignored the objective evidence in the record in support of his well-founded fear of persecution.

### A. Jurisdiction

This Court has jurisdiction to hear this petition for review of the Board's decision pursuant to 8 U.S.C. section 1105a(b) of the Act.

### B. Asylum and Withholding of Deportation Under the Act

■ A deportable alien who is currently in the United States may seek relief from deportation in two ways: asylum and withholding of deportation. See INS v. Cardoza–Fonseca, 480 U.S. 421, 423, 107 S.Ct. 1207, 1209, 94 L.Ed.2d 434 (1987). Under section 208(a) of the Act, the Attorney General may grant asylum to eligible aliens. See 8 U.S.C. § 1158(a). Under section 243(h) of the Act, the Attorney General must withhold deportation of an alien who establishes that if deported, his "life or freedom would be threatened" on account of one of many enumerated factors. See 8 U.S.C. § 1253(h). While asylum and withholding of deportation are closely related, there are two crucial distinctions. See Osorio v. INS, 18 F.3d 1017, 1021–1022 (2d Cir.1994).

■ First, the burden of proof that an alien is eligible for asylum is lower than the burden of proof for an alien who seeks withholding of deportation. See id. Asylum applicants must show a "reasonable possibility" of persecution under the "well-founded fear" standard of section 208. See Cardoza–Fonseca, 480 U.S. at 440, 107 S.Ct. at 1217; Osorio, at 1031. Applicants seeking withholding of deportation must establish the higher standard—a "clear probability of persecution"—to avoid deportation under section 243(h). See INS v. Stevic, 467 U.S. 407, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984).

Second, once an alien has proven eligible for either asylum or withholding of deportation, the granting asylum remains in the discretion of the Attorney General, while the withholding of deportation is required by statute. See id. For both asylum and withholding of deportation, the alien bears the burden of establishing eligibility. See id.

### C. Standard of Review

■ Interpretations of law of the Board will be reversed if unreasonable. See Osorio, at 1022. The Board's interpretation will be reversed if it appears, "from the statute or its legislative history," that the interpretation is contrary to the intent of Congress. See id.

■ The findings of fact of the Board are conclusive on this Court "if supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4). See Osorio, at 1022. This Court must therefore uphold the Board's findings of fact regarding petitioner's eligibility for asylum under section 208(a) or withholding of deportation under section 243(h) if they are reasonably supported by substantial evidence on the record. See id. Findings of fact will be reversed only if "a reasonable fact-finder would have to conclude" otherwise. See id.; INS v. Elias–Zacarias, — U.S. —, —, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992).

Petitioner urges that both the legal conclusions and the factual determinations of the Board are in error.

### D. Analysis

#### 1. Standard for Asylum

■ The Government will grant petitioner's request for asylum if he can establish that he is eligible for asylum and there are

no significant reasons to deny him asylum. *See* 8 U.S.C. § 1158(a). Petitioner is eligible for asylum if he meets the definition of refugee as set out in section 101(a)(42)(A) of the Act. That section defines refugee as:

> Any person who is outside any country of such person's nationality ... and who is unable or unwilling ... to avail himself or herself of the protection of that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

Section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A).

Petitioner urges that he has a well-founded fear of persecution and is therefore entitled to asylum. Petitioner maintains that the Board incorrectly applied the higher "clear probability" standard, applicable only to withholding of deportation applications, to his asylum application.

To establish a well-founded fear of persecution, petitioner must establish (1) that he has "a fear of persecution [in Nigeria] on account of ... political opinion," (2) that "there is a reasonable possibility of actually suffering such persecution if he were to return to [Nigeria]," and (3) that "he is unable or unwilling to return or to avail himself of the protection of [Nigeria] because of such fear." 8 C.F.R. § 208.13(b)(2). *See also Osorio*, at 1027.

▮▮▮▮ A "reasonable possibility" of persecution is sufficient to establish well-founded fear of persecution. *See Cardoza–Fonseca*, 480 U.S. at 440, 107 S.Ct. at 1217. A reasonable possibility of persecution can be shown be establishing (1) the existence of a pattern or practice of persecution of people similarly situated on account of political opinion and (2) that petitioner is a member of that group. *See Osorio*, at 1027–1028. The applicant's testimony, if credible, may be sufficient to sustain this burden of proof even without corroboration. *See* 8 C.F.R. § 208.-13(a).

## 2. Standard Applied by the Board

▮▮▮▮ It is not contested that petitioner's alleged fear is on account of his political opinion. Nor is it contested that petitioner is unwilling to return to Nigeria because of his alleged fear. What is contested is whether the Board applied the correct standard in evaluating that alleged well-founded fear. Petitioner asserts that the Board analyzed his asylum application under the clear probability standard applicable to withholding of deportation applications. Specifically, the Board dismissed petitioner's appeal from his denial of asylum because it concluded that petitioner had not established that more likely than not he would be subject to persecution if returned to Nigeria. *See* Board Decision, *supra*, at 4. The Supreme Court clearly rejected this standard in *Cardoza–Fonseca*, 480 U.S. at 449–50, 107 S.Ct. at 1222. *See also Rasool v. INS*, 758 F.Supp. 188, 191 (S.D.N.Y.1991) ("It is now settled law that an alien need not demonstrate that it is more likely than not that he will be subject to persecution in order to satisfy the "well-founded fear" standard.").

It is clear to this Court that the Board's application of the clear probability standard to the asylum application was incorrect and unreasonable. The correct standard for asylum is whether there is a reasonable possibility that the applicant will be persecuted, such that the applicant has a well-founded fear of persecution. *See Cardoza–Fonseca*, 480 U.S. at 440, 107 S.Ct. at 1217. The "more likely than not" standard applied by the Board imposes a heavier burden on the asylum applicant than he must bear.

## 3. Evidence in Support of Petitioner's Application

▮▮▮▮ In support of his application, petitioner presented both subjective and objective evidence of his well-founded fear. Petitioner has testified as to his pro-democracy activities with the NDR. He has described his dodging of arrest and the fates of other NDR members. Finally, he described his flight from the SSS. Documentary evidence corroborates his testimony. The Government offered no evidence to rebut this showing. The Board rejected this evidence as insufficient to support a grant of asylum under the clear probability standard. The evidence must be re-evaluated under the cor-

rect standard to see if it is sufficient to support a grant of asylum. This Court therefore remands the application to the Board for a re-examination of the evidence presented by petitioner under the correct standard of proof to establish a well-founded fear of persecution—the "reasonable possibility" standard.

### CONCLUSION

The Order of the Board of Immigration Appeals is reversed. The matter is remanded to the Board of Immigration Appeals for action consistent with this Opinion and Order. The Court orders this case closed and directs the clerk to remove it from the active docket.

**SO ORDERED.**