Yvette Badjoko NSUKAMI, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 94–CV–3951(ERK).

United States District Court,
E.D. New York.

May 17, 1995.

Bruno Joseph Bembi, Hempstead, NY, for plaintiff.

Scott A. Dunn, U.S. Attys. Office, E.D. of N.Y., Brooklyn, NY, for the Government.

## ORDER

KORMAN, District Judge.

The recommendation of the Magistrate to which no objection has been filed is adopted.

REPORT AND RECOMMENDATION

CHREIN, United States Magistrate Judge.

By order dated September 12, 1994 the above referenced matter was referred to the undersigned Magistrate Judge for a report and recommendation on the petitioner's writ of habeas corpus.

## BACKGROUND:

The petitioner is a native and citizen of Zaire who entered the United States on November 20, 1993. The petitioner concedes that she is deportable under 8 U.S.C. § 1251 (1970 & Supp.1995). Petitioner submitted an application for asylum and/or withholding of deportation which were denied in an oral decision by Immigration Judge Howard Cohen on February 7, 1994. In the alternative, petitioner requested that her case be remanded to enable her to present her application at a full evidentiary hearing before an impartial trier of fact. *See Petition For Writ Of Habeas Corpus, dated August 21, 1994.* Petitioner appealed to the Board of Immigration Appeals ("BIA") and the BIA denied her appeal on August 16, 1994. The petitioner is under a final order of exclusion.

On August 22, 1994, the petitioner filed a petition for a writ of habeas corpus. The issues raised in the petition are: (1) the decision denying petitioner's applications were not supported by substantial evidence; (2) the petitioner was denied due process by the Immigration Judge when he questioned the petitioner directly on many matters relating to her asylum application; (3) the Immigration Judge and the BIA applied an erroneous legal standard in evaluating petitioner's application for asylum; and (4) the petitioner was denied the right to present evidence on her behalf because the translation confused her during the questioning and neither she nor her attorney were permitted to explain themselves when the questioning became confusing and when her credibility was attacked.

On October 7, 1994 the petitioner filed a motion to amend the habeas corpus petition. The undersigned issued a report and recommendation which recommended granting the petitioner's motion to amend the complaint and the Honorable Edward R. Korman adopted the report and recommendation on November 17, 1994. The motion to amend added that "all references to credibility as used in the four claims for relief in the original habeas corpus petition hereby incorporate by reference, in part, an allegation that the failure to obtain a favorable credibility determination rested, in part, on errors in translation." The amendment also added a fifth claim for relief. The petitioner asserts she was not afforded a complete and accurate translation on the day of her Immigration court hearing. She alleges that the translation problem was magnified by the fact that petitioner's first language is Lingala, and thus, her limited comprehension and use of the French language did not provide an accurate record. Additionally, the translator's first language was not French either, which allegedly compounded the propensity for error. The petitioner argues that based on the errors in translation, petitioner's right to a fair hearing as required by the Fifth Amendment Due Process Clause was violated. Included in the amendments are allegations which describe the errors in translation that occurred at the petitioner's asylum hearing.

*Alleged Conditions in Zaire:*

Petitioner alleges that her father, Emmanuelle Badjoko, was a member of the National Assembly of the Zairian Parliament since 1984. Mr. Badjoko was also a member of an opposition party called Union for Democracy and Social Progress ("UDPS"). In 1987 the petitioner's father was told that his activities were in opposition to the government of Zaire. Since that time the petitioner's home has been the subject of harassment, scrutiny and subject to unwelcome visits by the Secret Police. In mid-September of 1991, the Army broke into the petitioner's house. They began beating the petitioner's father, took all the family's valuable possessions, attempted to rape the petitioner's mother and beat the petitioner. At this time, Mr. Badjoko was arrested and taken into custody as a political prisoner. The petitioner now believes that her father is dead.

In January 1992, the petitioner formed an organization for the liberation of political

prisoners. The group consisted of approximately nineteen members. This organization took part in a demonstration before the French Embassy on April 24, 1992 requesting support in obtaining the release of political prisoners. As the leader of the organization, the petitioner was arrested and imprisoned without a trial until June 1992. The petitioner was released on June 1, 1992.

On January 23, 1993, the petitioner alleges that the Army broke into her house again and demanded money and valuables. While searching the petitioner's house, the Army found letters and leaflets belonging to the petitioner's political organization. The petitioner was immediately arrested and taken to an Army detention center in "OAU city". The petitioner alleges that she was raped once and beaten repeatedly by soldiers during her imprisonment. On April 15, 1993 the petitioner claims she was taken to a hospital due to illness. During her hospital stay a friend of the petitioner's father, Paul Mukuya, arranged to have petitioner released by bribing a prison guard. Upon her release, the petitioner feared for her safety and stayed with a relative for six months in a neighborhood called Dijili until she left the country on October 14, 1993. The petitioner claims she left the country because a friend stated that the authorities were looking for her. The petitioner went to Congo, then Belgium and finally to the United States. The petitioner felt that she would not have been safe staying in Belgium because of the Belgian Government's close ties to Zaire's Mobutu government. The petitioner claims that if she returned to Zaire she would be killed.

*Prior Proceedings:*

In his decision the Immigration Judge stated that the testimony of petitioner "... was incredulous [sic], inconsistent, and contradictory...." *See Oral Decision Of The Immigration Judge ("IJ"), dated February 7, 1994, p. 3, annexed as Exhibit 3 to Petition for Writ of Habeas Corpus, dated August 21, 1994.* He specifically pointed to certain inconsistencies and problems with the petitioner's testimony. The Immigration Judge felt that the petitioner was not believable because she did not know what "UDPS" stood for *(IJ,* p. 4); failed to introduce any corroborating evidence including testimony of her father's friend, Paul Mukuya, her mother, Mrs. Maeli or any members of her political organization *(IJ* pp. 4–8); her political organization did not have a name; she did not explain how the bribery was arranged by Paul Mukuya *(IJ* p. 8); and petitioner offered no explanation as to why she did not stay in Congo *(IJ* p. 8). The Immigration Judge did not believe the petitioner's story, thus, found that she did not meet the requirements for an applicant seeking political asylum or withholding of deportation. *(IJ,* p. 9).

The BIA agreed with the Immigration Judge and stated that his conclusions were supported by the record. *See In re: Yvette Nsukami–Badjoko, In Exclusion Proceedings, Appeal ("Appeal"), dated August 16, 1994, annexed as Exhibit 4 to Petition for Habeas Corpus, dated August 21, 1994.* The BIA stated that although the petitioner provided corroborative evidence concerning civil unrest in her home country, she did not introduce any supporting evidence or documentation to support the claim that she will be persecuted if she returns to Zaire. *Appeal,* p. 5. Her application was solely supported by her own testimony, which the Immigration Judge stated lacked credibility. The Board recognized that the Immigration Judges' findings of credibility are given significant deference since the Immigration Judge is best able to observe the applicant's demeanor. *Appeal,* p. 5, citing *Turcios v. Immigration Naturalization Service,* 821 F.2d 1396 (9th Cir.1987); *Canjura–Flores v. Immigration Naturalization Service,* 784 F.2d 885 (9th Cir.1985); (other citations omitted). The Board held that the Immigration Judge's decision concerning the petitioner's credibility was supported by the record. *Appeal,* p. 5. They held that if petitioner was the President of a political organization seeking release of prisoners and her father was a political prisoner there should be documents supporting these allegations. *Id.* The Board stated there was no evidence in the record to support petitioner's personal experiences in Zaire or any evidence that efforts had been made to secure this information. Therefore, the Board held that the

petitioner failed to establish a well-founded fear of persecution and is not eligible for asylum under § 208 of the Act. *Id.* at 6. They held that she also failed to satisfy the higher burden of proof for withholding of deportation under § 243(h) of the Act. *Id.*

## DISCUSSION:

### A. JURISDICTION:

This court has jurisdiction to hear the habeas corpus petition for review of the Board's decision pursuant to 8 U.S.C. § 1105a(b) of the Act. *See* 8 U.S.C. § 1105a(b) (1970). An alien who is presently in the United States may seek relief from deportation in two ways: asylum and withholding of deportation. *See Michael v. Slattery,* 852 F.Supp. 211 (S.D.N.Y.1994), citing *Immigration Naturalization Service v. Cardoza–Fonseca,* 480 U.S. 421, 423, 107 S.Ct. 1207, 1208, 94 L.Ed.2d 434 (1987) (The Supreme Court articulates the difference between withholding of deportation and asylum).

### B. EXHAUSTION OF ADMINISTRATIVE REMEDIES:

Before addressing the merits of petitioner's claims, the court must determine whether the petitioner has exhausted her administrative remedies as required by 8 U.S.C. § 1105a(c). *See* 8 U.S.C. § 1105a(c) (1970 & Supp.1994). The Government argues that the petitioner did not exhaust the administrative remedies available with respect to errors in translation.[1] The petitioner claims that she did not get a fair hearing because the translator made numerous mistakes which adversely affected the Immigration Judge's determination of her credibility.

The petitioner argues that the claim concerning inadequate translation was preserved for review since the issue of credibility was raised before the BIA and a poor translation definitely affects the alien's appearance of credibility. The petitioner has not cited any authority to support this position and it is unfair to expect the BIA to know there was an incorrect translation without being presented with any evidence of an inaccurate translation.

The petitioner argues, in the alternative, that the doctrine requiring exhaustion of administrative remedies does not apply when the immigration court fails to produce a complete or an adequate administrative record. The petitioner asserts that the transcript produced by the immigration court failed to contain Ms. Nsukami's French statements and fails to contain the court interpreter's French statements, thereby making review of the record impossible. The petitioner argues that since the administrative record was inadequate, exhaustion was not necessary.

An alien has certain procedural and substantive rights; including the right to present evidence, cross-examine witnesses, inspect and object to evidence presented against the alien, and the right to counsel. *Augustin v. Sava,* 735 F.2d 32, 36 (2d Cir. 1984). In addition, an applicant is entitled to an accurate and complete translation of official proceedings. The translation services must be sufficient to enable the applicant to place her claim before the judge. *Id.* at 37, *see also* 8 C.F.R. § 242.12. The alien and the judge must be able to understand each other, in order for the hearing to be of any value. *Augustin,* 735 F.2d at 37, citing *Gonzales v. Zurbrick,* 45 F.2d 934, 937 (6 Cir. 1930).

While an alien has the right to an accurate and complete translation, this court is generally precluded from reviewing issues which were not first raised in an appeal to the Board. *See Vargas v. U.S. Dept. of Immigration and Naturalization Service,* 831 F.2d 906, 907–908 (9th Cir.1987). An exception exists where petitioner may bring for the first time before the court due process claims which the Board does not have the power to correct. *Marrero v. Immigration Naturalization Service,* 990 F.2d 772, 778 (3d Cir.1993); *Castaneda–Suarez v. Immigration Naturalization Service,* 993 F.2d 142, 144 (7th Cir.1993); and *Vargas,* 831 F.2d at 908. However, the exhaustion requirement must be met when the Board has jurisdiction to correct the procedural errors al-

---

1. Since the Government only asserts that the translation claim was not exhausted, I assume the other claims were exhausted in that they were presented to the BIA.

leged by the petitioner. *See Castaneda–Suarez*, 993 F.2d at 144.

In this case, the Board has authority to reopen the proceeding to address the inaccurate translation and to consider the damage that the translation may have caused the petitioner's perceived credibility by the Immigration Judge.[2] *See Ravindran v. Immigration Naturalization Service*, 976 F.2d 754, 762–763 (1st Cir.1992) (The petitioner claimed defects in translation, however he failed to exhaust with the BIA, thus the Court had no jurisdiction to hear this claim which could have been corrected by the BIA if the alleged defects were brought to its attention) and *Mentor v. Immigration Naturalization Service*, 834 F.Supp. 133, 137 (E.D.Pa.1993) (Petitioner argues for the first time to the District Court that his due process rights were violated when the interpreter failed to provide a competent translation of the proceedings. The court held that the Board had the power to order a new hearing if the translation was materially deficient, thus, the District Court held they were without jurisdiction to review the claim of inaccurate translation). Allowing the Board to address the petitioner's claims of inaccurate translation avoids any interference with the Agency's processes and affords the parties and courts the benefit of the Immigration Agency's expertise and thus, compiles a record that is adequate for judicial review. *See Castaneda–Suarez*, 993 F.2d at 145, citing *Roque–Carranza v. Immigration Naturalization Service*, 778 F.2d 1373, 1374 (9th Cir.1985). Therefore, it is the view of the undersigned that this court does not have jurisdiction to consider the petitioner's claims based on inaccurate translation.[3]

*Motion to Reopen:*

■ 8 C.F.R. § 3.8(a) provides a procedure for raising issues that were not addressed by the Board originally. The Board has discretion to decide whether a proceeding should be reopened. *Immigration Naturalization Service v. Doherty*, 502 U.S. 314, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992). 8 C.F.R. § 3.2 states that "[m]otions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing. . . ." *See Mohammad v. Slattery*, 842 F.Supp. 1553, 1559 (S.D.N.Y.1994). The petitioner claims she was denied meaningful judicial review because the record of the proceedings were inaccurate and incorrect. The petitioner's counsel obtained cassette tapes of the hearing and produced his own French transcripts comparing the interpreter's statements with the English translation and reviewing Ms. Nsukami's statements, thus establishing inaccuracies in the translation during the immigration hearing. In my opinion this court can not address the issue of inaccurate translation that may have effected the proceedings. However, the petitioner can by written motion request the Board to reopen deportation proceedings. *See* 8 C.F.R. § 3.2.

■ I am mindful of the fact that a motion to reopen proceedings does not automatically stay a deportation order. 8 C.F.R. § 3.8(a), *see Castaneda–Suarez*, 993 F.2d at 145; *Arango–Aradondo v. Immigration Naturalization Service*, 13 F.3d 610, 614 (2d Cir.1994). The petitioner is currently under a stay from

---

**2.** The petitioner's attorney has cited *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 494, 111 S.Ct. 888, 897, 112 L.Ed.2d 1005 (1991); *El Rescate Legal Servs. Inc. v. Executive Office of Immigration Review*, 959 F.2d 742, 746–747 (9th Cir.1991); *Montes v. Thornburgh*, 919 F.2d 531, 535 (9th Cir.1990); and *Haitian Refugee Ctr. v. Smith*, 676 F.2d 1023, 1033 (5th Cir.1982) to support the position that the exhaustion requirement is excused, however these cases are not applicable to the instant case. Ms. Nsukami is appealing her individual order of deportation and the above cited cases discuss excusing the exhaustion requirements when plaintiffs attack the adequacy of agency policies and proceedings;

not the review of individual Immigration determinations. *See Montes*, 919 F.2d at 536; *El Rescate Legal Services, Inc.*, 959 F.2d at 746; and *Ravindran*, 976 F.2d at 762.

**3.** Therefore this court can not address any of the petitioner's claims relating to errors in translation. The court cannot consider whether the petitioner was denied the opportunity to present evidence on her behalf because of the translation or whether her right to a fair hearing as guaranteed by the Due Process Clause was violated due to the errors in translation which occurred at the hearing.

the deportation order while this habeas petition is pending. "[T]he execution of a deportation order before the final resolution of any (non-frivolous) challenges to the order would raise significant equitable, if not constitutional, concerns." *Castaneda–Suarez,* 993 F.2d at 145. (citations omitted).

It appears to the undersigned, that Ms. Nsukami may have a non-frivolous claim to present before the Board. While I had no opportunity to witness her at the hearing, it seems that an inaccurate translation may very well have affected the Immigration Judge's perception of her credibility.[4] In addition, the transcribed tapes were not received by petitioner's attorney until October 2, 1994 which was after the BIA decided Ms. Nsukami's appeal. To avoid the deportation of Ms. Nsukami prior to the final resolution of her case, it is the respectful recommendation of the undersigned that the stay of deportation be continued for sixty days until the petitioner files a motion to reopen. *See Castaneda–Suarez,* 993 F.2d at 146, citing *Roque–Carranza,* 778 F.2d at 1374 (The court granted a stay of deportation until the motion to reopen was addressed by the Board); *Arango–Aradondo,* 13 F.3d at 615 (Second Circuit proceeded with the review of the habeas petition except for the unexhausted ineffective assistance of counsel claim and granted the petitioner a sixty day stay of deportation to file his motion to reopen on the unexhausted claim). If the petitioner fails to file this petition within sixty days of the adoption of this report and recommenda-

tion, then the stay should end. If the petitioner moves to reopen within this period, the stay should continue until the Immigration and Naturalization Service has completed any proceedings regarding Ms. Nsukami.

## C. MERITS OF THE PETITION:

Since we find that any claims regarding the incorrect translation is not properly before this court due to the petitioner's failure to administratively exhaust her claims; the issues properly before this court for review are whether the decision denying petitioner's applications were supported by substantial evidence, did the Immigration Judge deny the petitioner due process by questioning her *directly on matters relating to her asylum* application and whether the Immigration Judge and BIA applied an erroneous standard in evaluating petitioner's application.

*Decisions of the BIA and Immigration Judge were based on Substantial Evidence:*

■ In an appeal from a decision of the BIA, the BIA's conclusions of law are reviewed de novo, while factual findings are granted significant deference. Therefore the BIA's factual findings must be upheld if "supported by reasonable, substantial and probative evidence on the record considered as a whole." *Immigration and Naturalization Service v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 815, 117 L.Ed.2d 384 (1992), citing 8 U.S.C. § 1105a(a)(4) (1970).

The petitioner argues that the decisions of the Immigration Judge and BIA were not

---

4. The petitioner claims that the inaccurate translation seriously damaged her credibility with the judge. For instance, in his oral opinion the Judge cited examples of what he found to be unbelievable and incredible. As previously mentioned, the Judge stated that petitioner did not have a name for her Political Organization and did not adequately explain the bribery incident at the hospital. Mistakes made by the translator, however, may have had an effect on the Judge's determination of credibility because the translator inaccurately translated the petitioner's answers to questions concerning these incidents.

For example, it is claimed that the translator stated that the organization which petitioner was a member did not have a formal name. *See Petitioner's Memorandum of Law in Response to Respondents' Memorandum. . . . . dated November 30, 1994 ("Petitioner's Memo"), p. 14–15.* It is claimed that her correctly translated answer was

however, "The name was 'The Organization'; we gave the name 'Organization'." *Id.* at 15.

In addition, it is claimed that the translator incorrectly translated the petitioner's response to questions about the hospital incident where the petitioner claims to have escaped with the aid of her father's friend. The petitioner claims that the translator inaccurately stated ". . . [a] friend of my father had helped me by getting me a fake passport to help get me out." *See Petitioner's Memo, p. 17.* However, it is claimed that the petitioner actually stated ". . . I didn't know why he got me out. The friend of my father gave money to get me out. Let me leave. I was not aware of it (I didn't know)." *Id.*

It is unclear whether these inaccurate translations would have effected the Judge's decision, however the Judge was deprived of the petitioner's accurate answers.

based on substantial evidence. She asserts that her testimony was consistent and that the judge based his determination on what was not corroborated rather than the weight of the testimony itself.

### Asylum:

An applicant for asylum has the burden of proving that he or she meets the definition of refugee within the meaning of 8 U.S.C. § 1101(a)(42)(A). § 1101(a)(42)(A) defines refugee as

> any person who is outside any country of such person's nationality ... and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear or persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

 Ms. Nsukami claims that she has established a well-founded fear of persecution if she returns to Zaire. To illustrate a well-founded fear of persecution, applicants "must demonstrate a subjective fear of persecution and some objective facts supporting that fear." *Rasool v. Immigration Naturalization Service,* 758 F.Supp. 188, 191 (S.D.N.Y.1991), citing *Brice v. U.S. Dept. of Justice,* 806 F.2d 415, 418 (2d Cir.1986); *Carcamo-Flores v. Immigration Naturalization Service,* 805 F.2d 60, 64 (2d Cir.1986). In evaluating whether the applicant has sustained her burden of proving that she has a well-founded fear of persecution, she must first establish that she has a fear of persecution in Zaire, second, that there is a reasonable possibility of actually suffering such persecution if she returns to Zaire, and third, that she is unable or unwilling to return to or avail herself of the protection of Zaire because of such fear. *See* 8 C.F.R. § 208.13(b)(2). To prove a reasonable possibility of persecution, petitioner may establish that there is a pattern or practice in her country of persecution of groups of persons similarly situated to her on account of race, religion, nationality, membership in a particular social group or political opinion, and that petitioner is a member of such a group. *See* 8 C.F.R. § 208.13(b)(2)(i)(A, B). Once the

applicant establishes eligibility for asylum, a grant of asylum remains within the Attorney General's discretion. *Osorio v. Immigration Naturalization Service,* 18 F.3d 1017, 1021 (2d Cir.1994).

The BIA adopted Judge Cohen's finding that the petitioner's testimony was not credible. Credibility findings of the BIA and the Immigration Judge are reviewed to determine if they are supported by substantial evidence. *Vilorio-Lopez v. Immigration Naturalization Service,* 852 F.2d 1137, 1141 (9th Cir.1988). Reversal of a BIA decision is warranted only where the evidence "presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Elias-Zacarias,* 502 U.S. at 483–484, 112 S.Ct. at 817.

It is my opinion that a reasonable factfinder could find that petitioner lacked a well-founded fear of political persecution. The Immigration Judge found that the petitioner's testimony was "... incredulous [sic], inconsistent and contradictory ...," thus finding the petitioner has not established a well-founded fear of persecution. *See IJ, p. 3.* In his decision, Judge Cohen based his adverse credibility determination on several grounds. He pointed to the fact that the petitioner did not know what the letters of her father's political party stood for, that petitioner's political organization did not have a name, petitioner did not satisfactorily explain why she didn't seek refuge in Congo or Belgium, and she did not introduce any corroborating evidence concerning her or her father's involvement in political opposition parties in Zaire. In addition, the Judge found the story of the petitioner's escape from the prison hospital unbelievable. Ms. Nsukami did not explain how her father's friend, Paul Mukuya, knew she was going to the hospital on that day, nor how or if he was in touch with the petitioner's father who was allegedly incarcerated, how he managed to arrange her release. The BIA concluded that Judge Cohen's findings were supported by the record and that there was nothing in the record to disturb Judge Cohen's conclusions concerning the applicant's lack of credibility. *See Appeal, P. 5.*

The Immigration Judge's credibility findings on petitions for asylum are given substantial deference by the reviewing court, but must be supported by specific, cogent reason for the disbelief. *See Berroteran–Melendez v. Immigration Naturalization Service,* 955 F.2d 1251, 1256 (9th Cir.1992); *Ghasemimehr v. Immigration Naturalization Service,* 7 F.3d 1389 (8th Cir.1993); and *Estrada v. Immigration Naturalization Service,* 775 F.2d 1018, 1021 (9th Cir.1985) (The Immigration Judge's determinations are given a great deal of weight because the Judge is in the best position to evaluate the applicant's testimony).

Judge Cohen pointed to specific, cogent reasons for finding that the testimony of Ms. Nsukami lacks credibility. *Compare Vilorio–Lopez,* 852 F.2d at 1142 and *Chen v. Slattery,* 862 F.Supp. 814 (E.D.N.Y.1994) (Minor inconsistencies in the record that reveal nothing as to the substance of the alien's fear his or her safety are not an adequate basis for finding the applicant's testimony incredible). Judge Cohen's finding that the petitioner was not credible was supported by substantial evidence. The record supports this finding because the petitioner claims she was being persecuted and would be subject to future persecution based on her strong political views, however the record established that she did not know what the initials of her father's political party stood for and her own political organization did not have a formal name. In addition, the Judge found her story to be incredible and unbelievable, particularly in connection with the details pertaining to her escape from prison. *Compare Nasseri v. Moschorak,* 34 F.3d 723, 725–726 (9th Cir.1994) (The Court of Appeals held that the Board's adverse credibility finding was based on "faulty logic," because the Board based its finding on the fact that the political situation did not seem plausible, although the Immigration Judge found that petitioner testified in an honest and forthright manner. In addition, the petitioner supplied the Board with corroborating evidence about her opposition to the communist regime). I find that the reasons stated by the Immigration Judge were valid grounds for determining the petitioner was not credible. *See Nasseri,* 34 F.3d at 726. Therefore, it is my respectful recommendation that the Court find that the BIA properly affirmed the Immigration Judge's finding that petitioner failed to meet her burden of demonstrating a well-founded fear of persecution as required for political asylum.

### Withholding of Deportation:

█ The Attorney General must withhold deporting an alien who demonstrates that if deported his or her "life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1253(h) (1970 & Supp.1995). *See Osorio,* 18 F.3d at 1021 (withholding of deportation is mandatory for those who qualify). An alien must show a clear possibility of persecution to meet the standard for withholding of deportation. Thus, the petitioner must establish that it is more likely than not that the applicant will be persecuted upon return to a particular country. *Melendez v. U.S. Dept. of Justice,* 926 F.2d 211, 215 (2d Cir.1991); *Immigration Naturalization Service v. Stevic,* 467 U.S. 407, 413, 104 S.Ct. 2489, 2492, 81 L.Ed.2d 321 (1984).

The petitioner failed to demonstrate a well-founded fear of persecution required for asylum, therefore it is the respectful recommendation of the undersigned that this Court does not need to address whether Ms. Nsukami would meet the more stringent standard of a clear probability of persecution required for withholding of deportation. *See Immigration Naturalization Service v. Stevic,* 467 U.S. 407, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984).

### Corroboration of Petitioner's Testimony:

█ The petitioner asserts that her own testimony, if credible in light of the general conditions in Zaire may be sufficient to sustain the burden of proof without corroboration. *See* 8 C.F.R. §§ 208.13(a), 208.16(b). The petitioner claims that she did not have to corroborate the testimony which she gave in support of her asylum application. She argues that she was held to an unfair burden of proof by being expected to produce extensive documentation in support of her asylum claim.

■ It is well-established that the lack of corroborating evidence is not fatal to an application for asylum. The alien's testimony will be enough "if it is 'credible, persuasive, and refers to "specific facts that give rise to an inference that the applicant has been or has good reason to fear that he or she will be singled out for persecution." '" *Melendez,* 926 F.2d at 215, quoting *Del Valle v. Immigration Naturalization Service,* 776 F.2d 1407, 1411 (9th Cir.1985), quoting *Cardoza–Fonseca v. Immigration Naturalization Service,* 767 F.2d 1448, 1453 (9th Cir.1985), *aff'd,* 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). The Second Circuit has noted that credible testimony by the alien might suffice especially where conditions in the alien's native country make production of documentary evidence difficult or impossible. *Carcamo–Flores,* 805 F.2d at 64.

The Government argues that where an applicant has presented no supporting evidence other than her own testimony, this testimony must be found at least credible in order to obtain the desired relief. The Government points to the Immigration Judge's finding that petitioner's testimony was "incredulous, inconsistent and contradictory." In making this finding, Judge Cohen relied upon inconsistencies in petitioner's testimony in combination with the overall lack of corroboration.

The BIA stated correctly in its opinion that lack of corroborative evidence is not fatal to an application. In fact the BIA held that they recognize the difficulty that aliens may face in obtaining documentary or other corroborative evidence to support their claim of persecution and that an alien's own testimony may in some cases be the only evidence available. *See Appeal, p. 4.* The applicant's testimony may suffice to establish his or her fear if the testimony is believable, consistent and sufficiently detailed to provide a plausible and coherent account of the basis of his alleged fear. The BIA concluded that Ms. Nsukami did not meet this standard.

Since Ms. Nsukami's testimony was found not to be credible and this finding has been supported by substantial evidence, her testimony is not enough to meet the burden of establishing a well-founded fear of persecution to establish asylum or the higher standard to justify withholding of deportation. The BIA articulated the correct standard under Second Circuit precedent concerning corroboration of testimony, thus, it is my respectful recommendation that the Court find that there was no error in the standard applied by the BIA.

*Due Process Violation:*

■ The petitioner contends that her fifth amendment due process right to present evidence before an impartial trier of fact was denied when the Immigration Judge questioned Ms. Nsukami directly on many matters relating to the asylum application and her credibility as to statements she made.

An immigration judge may "... interrogate, examine, and cross-examine the alien or witnesses...." 8 U.S.C. § 1252(b) (1970 & Supp.1995). Procedural due process is violated when the actions of the government substantially prejudice the protesting party. *Calderon–Ontiveros v. Immigration Naturalization Service,* 809 F.2d 1050, 1052 (5th Cir.1986) (citations omitted). In *Calderon–Ontiveros,* the petitioner claimed that the immigration judge's vigorous questioning substantially prejudiced his case. The court held that the judge's questions did not deny the petitioner a meaningful and fair hearing. *Id.* Further, the questions asked by the Judge were not designed to trick the petitioner nor did the questioning result in an incorrect resolution of this case. *Id.*

In the instant case, Judge Cohen did not exceed his statutory authorization granted in 8 U.S.C. § 1252(b). He questioned the petitioner throughout the hearing on the claims she was raising, however he is allowed to interrogate and examine witnesses at the hearing. He did not attempt to trick the petitioner with his questions, nor did his questions substantially prejudice the petitioner, thus the petitioner's due process rights were not violated. *Compare Walberg v. Israel,* 766 F.2d 1071, 1073 (7th Cir.1985), *cert. denied,* 474 U.S. 1013, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985) (The judge denied the defendant a fair trial when he answered questions posed to the defendant before the defendant could answer and criticized a prosecution witness who testified favorably for the defense).

### CONCLUSION:

For the reasons set forth above it is the respectful recommendation of the undersigned that Ms. Nsukami's petition for habeas corpus be denied. Based on the record presented to the Immigration Judge and the BIA, their decisions were supported by substantial evidence. Any claims based on inaccurate or incorrect translation may not be addressed by this court because these claims were not properly exhausted. The petitioner may move to reopen the proceedings to fully exhaust these claims pertaining to inaccurate translation within sixty days from the date of the adoption by the Court of this Report and Recommendation. If the petitioner fails to file her motion to reopen within this time frame then the stay of deportation should end. Any objections to the recommendations contained herein must be filed with the Honorable Edward R. Korman on or before May 10, 1995. 28 U.S.C. § 636; Fed.R.Civ.P. 6, 72. Failure to object will preclude appellate review.

Dated: Brooklyn, New York

April 26, 1995